## LISLE v. THE STATE.

AUGUST TERM
1840.

Lisle
v.
The State.

| 6 | 426 |
| 35a | 358 |
| 6 | 426 |
| 53a | 603 |
| 6 | 426 |
| 132 | 197 |
| 6 | 426 |
| 137 | 269 |

1. A person indicted for a capital offence may waive his right to a copy of the indictment, and if he pleads and goes to trial without making objection for the want of such copy, he cannot object after verdict.

2. The incompetency of a juror is no ground for a new trial, when such incompetency was known to the party before the juror was sworn in chief, and no objection was then made.

Appeal from Howard Circuit Court.

*Clark and Davis Counsel for Appellant.*

It is contended in behalf of the prisoner, that a new trial should have been granted, (after setting aside the verdict of the jury) by the circuit court, for divers reasons: The first of which is, that no copy of the indictment was furnished the prisoner or his counsel, before the trial in the circuit court; see Rev. Statute, page 485, sec. 1.

It is not a waiver of any of the legal rights of the prisoner, that he went to trial without demanding a copy of the indictment. See 18 John. Rep. page 212. The People vs. McKay.

The next point is, had the prisoner a trial by an impartial jury as prescribed by the constitution? See page 27, Declaration of Rights, sec. 9, (in Statute book.) Also see Statute page 490, secs. 11 & 12. Whatever is good cause of challenge to a juror, if not discovered till after verdict, is good ground for a new trial. See Vance vs. Heaslet, 4 Bibb, 191. McKinley vs. Smith, Hard 167. Pierce vs. Bush, 3 Bibb 347.

The affidavit of David Morrow, a juror, was improperly received by the court below, on the motion for a new trial to prove that he was an impartial juror. See Vance vs. Heaslet 4 Bibb 191.

*J. M. Gordon (Cir. Att'y.) Counsel for the State.*

As to the first point presented, I insist that the law is well established that the affidavit of a juror cannot be received after he has consented to the verdict to explain the reasons or grounds either of law or fact, upon which he found his verdict, for the purpose of impeaching or setting it aside. See 1 Hen. & Munf. 385. Hardin Rep. 586. 4 Johnson's Reps. 487. 3 J. J. Marshall's Rep. page 495.

The second point is equally well established, that although the affidavit of a juror cannot be read to impeach his verdict, it is always competent for the purpose of supporting and sustaining his verdict, 4 Johnson's Reports 487. 3 J. J. Marshall's Reports, 395.

The third point is as to competency of David Morrow, as juror. I insist that although he had formed and expressed an opinion, yet as that opinion was founded on rumor, and was not such as biassed or prejudiced his mind, he was a competent juror. Revised Code p. 490, sec. 11. By that section of the law, the juror is necessarily made the judge whether he has bias or prejudice on his mind.

But, in regard to the fourth question, admitting that Morrow, the juror, was incompetent, and that there was cause for challenge to the juror, yet as the prisoner had full knowledge of the fact, when the juror was sworn on the voir dire and he neglected to interpose his right of challenge, either for cause, or peremptorily, he cannot avail himself after verdict, of the incompetency of the juror. 3 Marshall's Reps. 330. 1 Binney 27. 4 Bibb 272. 4 Littell's Rep. 118. 4 Bar. & Alderson 430. 8 Bar. & Cris. 417.

My answer to the fifth point presented is, that the Statute which requires the clerk of the court to deliver to the prisoner or his counsel a copy of the indictment, at least fortyeight hours before he shall be arraigned on the indictment, is merely directory. See Rev. Code page 485, sec. 4, article the fifth, under the head of Practice and Proceedings in criminal cases, and that the prisoner waived his right to a copy of the indictment, by pleading and going to trial without objection. It is too late after verdict for the prisoner to complain that a copy had not been furnished him or his counsel before the trial. Foster's Crown law, 229 & 30. Chit. crim. law page 405. 1 East pleas of the crown, 112 & 13. 3 Howard's Rep. 429. 1 Mo. Rep. 717. 7 Wendell's Rep. 417; by going to trial without objection he admitted that he had a copy sufficient for the purposes intended by the law, or that he had no defence to set up, which required the inspection of a copy.

As to the sixth point. I insist that as the evidence has

not been saved, by the bill of exceptions, this court will not undertake to decide whether the court below committed error, in not giving the instructions asked by the circuit attorney, but will presume that the court below did right until the contrary is made to appear to this court.

### Opinion of the Court by Napton, Judge.

The appellant was indicted for the murder of one Hiram Wilson, was tried and convicted of murder in the first degree. The prisoner filed his motion for a new trial, and in support of said motion introduced certain affidavits. The affidavit of Mr. Tracy stated, that on the morning of the day on which the trial of Lisle commenced, he saw David Morrow (one of the jurors) in the street, near his house, and enquired of him what was done with Lisle, who answered that he did not know he ought to express any opinion—but remarked that it did not make any difference, as he supposed all the jurors had made up their opinions. That he had made up his opinion and was for hanging Lisle. This was, as the affiant believed, said in reply to the father of witness who was in his company. This affidavit was corroborated by another affidavit of Ellery Tracy, the father of the first affiant, who deposed substantially to the conversation with Morrow, as the first affiant had represented it. The affidavit of William Kanes was also introduced, who deposed that about a week before the term of the court at which Lisle was tried, David Morrow was at his house, and had a conversation with the affiant about the probable guilt of said Lisle, in which conversation, Morrow among other things said that "Lisle was a fool for not running away when he was out of jail, for if he was not hung, it was useless to have laws or a jail."

The affidavit of the prisoner was also read, which stated that at the time the jury were sworn, he had no knowledge that Morrow, one of the jury, had before that time expressed an opinion, as to the guilt or innocence of the affiant, but had never ascertained that fact, until after the verdict of the jury was rendered.

The State then offered the affidavit of Morrow, the juror,

who declares that after he had been sworn to answer questions, he, with others was asked whether he had formed or expressed an opinion in relation to the guilt or innocence of the accused, to which he replied that he had, but that his opinion was founded on rumor only. The affiant further stated, that that opinion had not been formed from any thing he had heard from any witness in the cause, or from any personal knowledge of the facts—that that opinion had no bias or prejudice on his mind in rendering his verdict, but he made up his opinion from the facts in evidence, and moreover that he entertained no ill will or malice against the accused.

So much of this affidavit as related to what the juror had stated on his examination was admitted to be read; but the remainder was excluded.

It also appeared in evidence, on the motion for a new trial, that no copy of the indictment had been given to the prisoner, or his counsel, before ordering the trial of this cause, nor had any been demanded by the defendant or his counsel, nor had any objections been made to going into trial for want of such copy.

On this evidence, the court overruled the motion for a new trial, and the defendant appealed to this court.

1. The first ground upon which the appellant seeks a reversal of this judgment, is the failure of the clerk to furnish him or his counsel with a copy of the indictment, forty eight hours before he was arraigned.

This duty is imposed upon the clerk by our statute, (Rev. Co. 465,) and is obviously for the purpose of enabling the defendant to prepare his defence. If the clerk neglects his duty in this particular, the defendant had undoubtedly a right to delay his trial, until the statute was complied with; but if he pleads without such copy of the indictment, and makes no objection for the want of such copy, can he after verdict, claim a new trial for this cause? I think not. The Supreme Court of Mississippi thought not, under a similar statute and under a similar state of facts, (3 Howard Rep. 429,) and sustained their opinion upon common law authorities as well as upon principle. In England, the defendant is entitled to a copy of the indictment and caption, upon de-

AUGUST TERM<br>1840.

Lisle<br>v.<br>The State.

A person indicted for a capital offence may waive his right to a copy of the in-

AUGUST TERM
1840.

Lisle
v.
The State.

dictment, and if he pleads and goes to trial without making objection for the want of such copy, he cannot object after verdict.

mand, and yet it has been held, that though demanded, if the party goes into trial without such copy or with an imperfect copy, he cannot object after verdict. Chitty crim. law 405. Foster crim. law, 229–30. 1 East. pleas of the Crown, 112, 113. The right of the defendant in England, after a demand of the copy of the accusation stands precisely on the same grounds, which they do under our statute without any demand, and the opinion of Foster and East and Chitty is conclusive on this point so far as the adjudications in England are concerned.

The case of the People v. McKay, (18 Johns R. 212,) has been supposed to conflict with this position. In that case, the court decided, that where a prisoner was tried at a court of Oyer and Terminer and goal delivery for murder and convicted, without a venire returned and filed, it was necessary to arrest the judgment and grant a new trial. The opinion I apprehend is not at all apposite. The grounds of that decision, as appears from the opinion of Judge Spencer, were, that the process of venire was indispensibly requisite at common law, and by the statutes of that state; that this process must be regularly returned, and the process itself, together with the return, must be on the record, and its omission is an error *apparent on the face of the record:* of course under such circumstances, the court could do no otherwise then arrest the judgment, however technical or formal the objection.

In the case now before the court, the objection is not merely technical, but is founded on matters in pais. The order upon the clerk, if any had been made, for a copy of the indictment, would have formed no part of the record, its omission cannot appear by the record. No prejudice to the prisoner can be shown to have resulted. There is nothing therefore of strict technicality, which has not been waived, and no merits in any other respect, which could induce the court to grant a new trial.

2. The only other question for consideration, is the propriety of refusing to grant a new trial in consequence of the alleged incompetency of one of the jurors. Whether this

juror was incompetent or not, I do not think it necessary,
in this case to determine. It has been suggested in argu-
ment, that the section of our statute, (Rev. Co. 490, § 11,)
which provides that a juror, who declares on his voir dire
that he has formed and expressed an opinion, may neverthe-
less be sworn, if that opinion be grounded merely on rumor,
and is not such as could bias or prejudice his mind, is an
evasion of the constitutional requisition, which declares that
every offender shall have a fair and impartial jury. It is
supposed, that a juror, who has formed an opinion, no mat-
ter from what sources of information, is not such an *impar-
tial* juror as the constitution contemplates. It may be said
however in relation to this, that it might be a nice point in met-
aphysics to determine how far the mind was compelled to as-
sent to or dissent from the truth of a supposed state of facts,
when presented to its contemplation, and that for the ordinary
purposes of life, we are well assured, that an opinion or
rather inclination of the judgment, founded on a supposed
state of facts, when it is unaccompanied with any prejudice
or ill will to the parties concerned, will very readily be re-
moved and changed, by the presentation of a different state
of facts, and the person whose judgment is invoked is as
capable of doing justice as though he had never heard any
incorrect or imperfect statements in relation to the matter.
However this may be, it is of no consequence for the decis-
ion of this case, whether the juror was incompetent or not.
If the juror was incompetent, and that incompetency was
known to the defendant before the trial, he cannot now
seek to reverse the judgment on that ground.

This is not only consistent with justice, but amply sus-
tained by the authorities, without, so far as I have been able
to discover, a dissenting voice. 3 Marsh 330. 1 Binney 27.
4 Bibb 272. 4 Littell 118. The case of Bell v. Howard is di-
rectly in point. The court said, in relation to such an ob-
jection, "It is apparent, that when the juror was called on
the trial, he disclosed the fact of his having made up an opin-
ion before he was sworn. Bell should therefore have objec-
ted to the juror before he was sworn, and having failed to

do so, it was too late after trial, to make the incompetency of the juror a ground for a new trial, 4 Litt. 118.

The consequences which would follow any other doctrine seem indeed too monstrous to be tolerated. I apprehend, on this point, there can be no difference in the rule in civil and criminal cases, and if in civil cases, either party may receive incompetent jurors, and after taking the chances of the opinion of the juror being in his favor, make it a ground for reversing the verdict, when it is discovered to be otherwise, there could be no end to litigation.

It has been urged however, that the answer of Morrow, the juror, to the double interrogatory propounded to him, being general, might have been applied by the defendant to either branch of the question, and he might have been understood by defendant to have *formed* an opinion, but not to have expressed one. If the answer of the juror was equivocal, it was the duty of the defendant to have obtained a more satisfactory one, at the time. He had ample power for so doing, and in the event of a remaining dissatisfaction, he had his peremptory challenges, by which the juror could have been disposed of. Our law, in tenderness to human life, has thrown most ample guards around the accused; it not only yields to every just requisition, but allows much even to the whims and caprices of the defendant; so that not only an impartial public may concur in the justice of his sentence, but even the prisoner himself may be satisfied, that all his fancies have been consulted, in the choice of his triers. Counsel are assigned him to enable him judiciously to use all these advantages. If however he will voluntarily waive these privileges, he cannot afterwards complain of his own laches. Judgment affirmed.