CORA CONWAY, *Respondent, v.* JETER CLINTON, *et al., Appellants.*

CHALLENGE FOR CAUSE HOW WAIVED.—A Defendant who interposes a challenge to a juror for *cause,* which is denied, and subsequently peremptorily challenges the same party, is not prejudiced by the ruling of the Court.

QUALIFICATION AS JUROR MUST EXIST WHEN THE PERSON IS OFFERED.—The provision of the Territorial statute that a person shall not serve as a petit juror unless he is the owner of taxable property is express and cannot be disregarded. The qualification must exist at the time he is offered as a juror, and it does not satisfy the statute that he possessed the qualification when the jury list was prepared.

POLAND BILL NOT EXCLUSIVE AS TO QUALIFICATIONS OF JURORS.—The Poland Bill does not profess to prescribe *all* the qualifications of jurors in this Territory, and it supercedes and controls the Territorial laws only so far as it prescribes a new qualification of the same kind as embraced in the Territorial law.

WHEN JUROR SHOULD BE EXCLUDED.—A juror who has formed an unqualified opinion as to the merits of a case, and states that it would require evidence to remove such opinion, should upon a challenge be excluded from the jury.

BASIS OF JURORS' OPINION NOT MATERIAL.—It is not material upon what the opinions of the juror are founded, whether upon rumor or fact, for it is the unbiased state of mind that is requisite.

ERROR ONCE SHOWN, HOW REMOVED.—When error appears in the record, to avoid its effect, resort cannot be had to presumption, but it can only be removed by matter affirmatively shown by the record.

WHEN WITNESS NOT BOUND TO ANSWER QUESTION—A witness is not bound to answer, nor is a Court to compel an answer to an inquiry to disgrace a witness unless the evidence is material to the issue being tried.

INQUIRY AS TO MOTIVE OF WITNESS WHEN MADE.—When the motive of a witness in performing a particular act or making a particular declaration becomes a material issue in a cause, he may be permitted to testify in regard to it.

INCONSISTENT DEFENSES, HOW OBJECTED TO.—It inconsistent defenses are set up in an answer, advantage of it must be taken by motion or demurrer, otherwise the defect is waived, and upon the trial the party may rely upon such defenses.

INSUFFICIENT DENIAL RAISES NO ISSUE.—Under our rules of pleading a denial of the exact sum claimed by Plaintiff, or if damage, in the precise amount alleged, is insufficient and raises no issue.

PROPERTY NOT AFFECTED BY THE CRIMES OF THE OWNER.—The private household goods of a criminal cannot be deemed to be affected by the crimes and misconduct of the owner, and such property cannot be destroyed or taken, except by due process of law.

APPEAL from the Third District Court.

The facts necessary to explain the decision of the case appear in the Opinion.

*Sutherland & Bates,* for Appellants.

*Robertson & McBride,* for Respondent.

Lowe, C. J., delivered the Opinion of the Court.

Boreman, J., dissenting.

The Plaintiff sued the Defendants above named and three others for the malicious destruction of goods and chattels, and verdict and judgment were rendered for Plaintiff against the above named Defendants, who appeal.

The challenge by the Defendants to the array of the petit jury was properly overruled. For aught that appears the list from which they were drawn was constituted in accordance with law.

In the impannelling of the jury Geo. W. Scott was challenged for cause by the Defendants, and the challenge denied, which is assigned as error. It appears, however, that he was subsequently challenged peremptorily by the same party, and was not sworn as a juror. Whether, therefore, the challenge was properly denied or not, as he did not serve as a juror, the Defendant was not prejudiced by the ruling, and the assignment of error cannot be sustained. (Mimms *v.* The State—Ohio State Reports 221).

On the examination of Orlando Crowell, a juror, he testified upon his *voir dire* that he was not the owner of taxable property at that time; that he was the owner of taxable property at the time of making the jury list in the preceding August; but had not paid taxes, and did not know that he was assessed. The defendant challenged for cause which was denied. The 163d section of the Practice Act provides that challenges for cause may be taken on the following grounds:

"1st. A want of any of the qualifications prescribed by statute to render a person competent as a juror." By

section 4th of the Act of Janury 21st, 1859, it is provided that " A person is not eligible to serve, and therefore shall not serve on any grand or petit jury unless &ast; &ast; &ast; owns taxable property and pays taxes in this Territory." The provision that a person shall not serve as a petit juror unless he is the owner of taxable property is express and cannot be disregarded. The qualification must exist at the time he is offered, and it does not satisfy the statute that he had the qualification when the jury list was prepared. The necessity of this qualification is not obviated by the Act of Congress of June 23d, 1874. That Act does not profess to prescribe all the qualifications of jurors in this Territory, but only prescribes the qualifications of those who shall be placed on the general list from which jurors are drawn. It provides that the officers who prepare the list shall " alternately select the name of a male citizen of the United States who has resided in the district for the period of six months next preceding, and who can read and write the English language." Jurors must therefore have the qualifications thus indicated, but they are not exclusive of other qualifications. If the statute were to be regarded as defining all the requisite qualifications of jurors, it would result in allowing jurors to serve who are in consanguity with parties; who are debtor or creditor to the parties, or in relation of guardian or ward, or had formed or expressed opinions, or who had been convicted of an infamous crime—all of which are subjects of challenge by express Territorial statute. This cannot for a moment be admitted to be the intent or effect of the Act. So far as the Act of Congress prescribes a new qualification or so far as it covers and embraces a qualification of the same kind as any contained in the Territorial laws, it supercedes and controls the latter. Thus it adds a new qualification that the juror must be able to read and write the English language, and it authorizes a juror who has been a resident of six months, thus superceding the twelve months qualification of the Territorial Act; but the subject of ownership of taxable property is not em-

braced in the Act, and nothing in the Act is inconsistent with the Territorial law on that subject, and the latter must be held to be in force. It results that the Court erred in denying the challenge of Mr. Crowell.

Mr. James Lowe was also called as a juror, and being examined as to his qualifications, testified as follows:

Plaintiff—Do you know anything about this case? A. I do; I have heard it spoken of.

Q. From what you have heard, have you formed or expressed an unqualified opinion? A. I have.

Q. Did you hear what purported to be the facts? A. No, I have not; I don't know anything about it only what was spoken of on the streets, and read about in the papers.

Q. Then the opinion you formed is an opinion based upon that rumor? A. Yes, sir.

Q. Do you say that that opinion is an unqualified one? A. It is qualified by what I have heard.

Q. Have you any bias or prejudice for or against either of the parties? A. No, sir.

Q. Is there anything to prevent you from rendering an impartial verdict? No, sir.

Q. Have you any business relations with either of the parties? A. I guess not; I don't know of any.

Q. You reside in town? A. Yes, sir.

Q. Did you in August, 1872? A. Yes, sir.

O. You think you could render an impartial verdict A. I could from the testimony.

Q. What did I understand you to say in reply, in regard to an unqualified opinion? A. At the time when I heard of the case I formed an opinion; it was only based on the rumors.

Passed by plaintiff.

Defendants—I understood you, Mr. Lowe, that at the time you heard the rumors you had formed an opinion? A. Yes, sir.

Q. And at that time it was an unqualified opinion? A. Yes, sir.

Q. Then it would take evidence to remove that

opinion?   A. Yes; it would take evidence to remove it.

Q. How far did you live from the place where it happened?   A. I lived in the Seventh Ward at the time.

Q. I understand you formed the unqualified opinion from the reports?   A. Yes, sir.

Q. You did not talk with any person that knew anything about it?   A. No, sir.

Q. Would not these reports bias your mind still, unless it was removed by testimony?   A. It would.

Upon this examination the defendant challenged for cause under the sixth subdivision of the 163d section of the code, which gives a challenge where the juror has formed or expressed an unqualified opinion or belief as to the merits of the action. The challenge was denied and the juror sworn in the cause. We can see no reason for disallowing this challenge. The juror says emphatically that he has formed an unqualified opinion, and though in one answer he says he thinks he could render an impartial verdict, yet in the conclusion of this examination he repeats that he had formed an unqualified opinion, and that it would bias his mind unless removed by testimony. To a juror whose mind is thus freighted with definite opinions of the merits of a case, the law justly interposes the right of a challenge. The law intends, and it is the parties' right, to have jurors who are impartial, and whose minds are not embarrassed with unqualified, preconceived opinions of the case. Nor is it material upon what his opinions are founded, whether upon rumor or fact. It is the unbiased state of mind that is requisite, so as to enable the juror with candor and impartiality to decide upon the rights of litigants submitted to his consideration.

It is suggested that the defendants did not make use of their peremptory challenges, and as they might have challenged these jurors peremptorily and did not, the objection should be regarded as waived, and the error as not prejudicial. If the doctrine thus stated were to be regarded as correct, of which we are not satisfied, still it would not work a cure of the error; for it appears that

the Defendants exercised two peremptory challenges and could not therefore have had but one left, while two incompetent jurors were sworn.    But it should be further observed that while it appears that the defendants used two peremptory challenges, it does not affirmatively appear that they did not use more, nor that all their challenges were not exhausted.    When error appears upon the record, to avoid its effects resort cannot be had to presumption, but can only be removed by matter affirmatively shown by the record.    We think the challenges were erroneously denied.

The Plaintiff, being a witness in her own behalf, was asked on cross-examination this question :    "Were you not convicted at this time of keeping a house of prostitution, on the 29th of August, 1872 ?"    An objection to the question was sustained by the Court, which is assigned for error.    The fact sought to be elicited, as implied by the question, was immaterial to the issue ; and had it been material, could only be proved by the production of the record of conviction.    Doubtless, however, the question was asked with a view to disparage the witness and affect her credibility.    A just and reasonable latitude may be allowed in cross-examination of a witness with a view to ascertain the measure of reliance to be placed upon a witness' testimony; but it is well-settled that a witness is not bound to answer, nor a court to compel answer to an inquiry to disgrace a witness unless the evidence is material to the issue being tried.    Lohman *v.* the People, 1 Comstock 379; G. W. Turnpike Co. *v.* Loomis, 32 N. Y., 127.    The Court in its discretion, may permit disparaging questions to be asked, but when they are irrelevant to the issue it is not error to exclude them.    In Rex *v.* Pitcher, 1 Carr & Payne, 85, the English rule is stated to be that "In practice the asking of questions to degrade the witness is regulated by the discretion of the learned Judge in each particular case."    There was no error in excluding the question.

William Hyde, one of the defendants, being a witness was asked by defendants' counsel :    "State what motive

you had, if any other than to obey the writ, in doing the act complained of in this case at No. 41 Commercial street, when you went to execute the writ now in your hands." Also, "State whether at that time you had any ill-will against the plaintiff." To these questions the plaintiff objected, and the Court sustained the objection. One of the issues of the case was the malice of the defendants. The witness, as defendant, was charged with maliciously and wantonly destroying the goods of the Plaintiff. It was incumbent upon the plaintiff to prove, and the right of the defendant to disprove, that the acts were done maliciously. Where the motive of a party is thus in issue, he may testify to it himself. If he should say his motives were malicious, it would properly inure to the advantage of the plaintiff, and it is none the less competent for him to disclaim the malice. Doubtless, a witness in thus speaking of his own motives may state as a fact that which no other witness can directly and categorically deny, but the weight of the testimony is for the jury to determine. This question has been directly so decided in New York and Ohio. McKown v. Hunter, 30 N. Y. 625 ; White v. Tucker, 16 O. State 468. In the former case Hoogboom, J., giving the opinion of the Court of Appeals, and speaking of several cases previously decided embracing the same principle, says : "These cases go very far to establish the general principle that where the motion of a witness in performing a particular act or making a particular declaration becomes a material issue in a cause, or reflects important light upon such issue, he may himself be sworn in regard to it notwithstanding the diminished credit to which his testimony may be entitled as coming from the mouth of an interested witness." We are of the opinion that the questions were proper and that they should have been allowed.

It appears from the record that the Court charged the jury, "that the defendants, Jeter Clinton, John D. T. McAllister, Wm. Hyde and Charles Crowe have admitted by their answers in this case that they destroyed

the property of the Plaintiff, and in order to escape lia-
bility therefor they must show that their acts in destroy-
ing were lawful," and this is assigned for error.   No such
express admission is found in any of the answers.   Upon
inspection of the answer of Jeter Clinton we find this
denial:    "He, this Defendant, further denies that he,
this Defendant, on the 29th day of August, 1872, or at
any other time, at No. 17, Commercial street, in Salt
Lake City, in said county and Territory, or at any other
place, wantonly or maliciously or otherwise, destroyed or
took and carried away the personal goods of the Plain-
tiff described in the complaint, or any part thereof."
Similar language is used in denying that he employed or
assisted the other Defendants to do the acts complained
of.    This denial is full and explicit, and surely puts in
issue the averments of the complaint to which they were
directed.    It is probable, however, that the instruction
was asked and given upon the theory that the matter
attempted to be set up by way of justification, and avoid-
ance was inconsistent with the denials, and should be re-
garded as an admission of the destruction of the property.
But this theory is untenable.    If inconsistent defenses
are set up in answer, advantage of it must be taken by
motion or demurrer, otherwise the defect is waived, and
at the trial the party may rely upon both defenses.    See
Klink *v.* Cohen, 13 Cal. 623 ; [and Uridias *v.* Morrell, 25
Cal. 21, where this point is directly ruled.    Also Bell *v.*
Brown, 22 Cal. 671 ; and Stiles *v.* Comstock, 9 Howard
48.    The instruction was erroneous.

The defendant asked this instruction :  "The pleadings
contain no admission of the value of the property in
question, and there can be no recovery in any event
beyond the amount of damages actually proved," which
instruction was refused and the refusal is assigned for
error.    An examination of the answers shows that the
denials of value were simply a denial of the value alleged,
$6,457, without any words of denial as to any less value,
excepting that the value of a diamond ring was specific-
ally put in issue.    Under rules of pleading like our own

it is held by the Supreme Court of California that a denial of value, or of damage in the precise amount alleged without more, raises no issue. Houston *v.* F. & C. C. T. R. Co., 45 Cal. 550; Higgins *v.* Mortel, 18 Cal. 330; Patterson *v.* Ely, 19 Cal. 28. The case of Houston *v.* T. & C. C. T. R. Co. was an action of tort in which damages were alleged in eight hundred dollars, and the Defendants denied in these words : "They deny that Plaintiff has suffered damages in the sum of eight hundred dollars." No proof of damages was given, and the Plaintiff had judgment for $800. On an appeal the Supreme Court said : "No proof of damages was required as no issue was made on that point. A denial that the Plaintiff has suffered damage, in the exact sum claimed by him, is insufficient." There was no error in refusing the instruction.

The instruction of the Court to the effect that the warrant issued by Clinton to McAllister was no justification for the destruction of the property, was correct. The supposed writ was void on its face. It directed the destruction of property which was not authorized by any valid law or ordinance. The declaration of *magna charta* incorporated as part of the fundamental law of the land by the Sixth Article of Amendment to the Constitution, that "No person shall be deprived of life, liberty or property without due process of law," was clearly vio-. lated. Saying nothing of the right under proper statutes and due modes of adjudication to destroy the immediate instruments and devices of gambling, the private household goods of a criminal cannot be deemed to be affected by the crimes or misconduct of their owner, and criminals as well as honest men are entitled to the protection of the law in their rights of person and property.

It is suggested that the Defendants cannot have been prejudiced by the errors referred to, and therefore the verdict should not be disturbed ; but we do not know and cannot ascertain from the record that the errors are not prejudicial, for the record nowhere shows that the evi-. dence contained in the statement was all the evidence

introduced in the trial. When error intervenes, it follows that there is prejudice, unless the contrary is also shown from the record.

We have thus adverted to those questions presented by the record most likely to be of importance on a re-trial of the cause ; and for the errors referred to, the judgment is reversed, the verdict set aside, and the cause remanded for trial *de novo.*

### Dissenting Opinion.

Boreman, J., delivered the following opinion, dissenting from a majority of the Court :

In the opinion just read, it is held that the Court below committed four errors, for which its judgment should be reversed.

Two of the errors have reference to challenges to jurymen Crowell and Lowe. The challenge of Lowe was not in my opinion good, and the Court committed no error in overruling it. The juryman had no opinion, and not such opinion as he or any one would act upon in the usual affairs of life. People *v.* Reynolds, 16 Cal. 128. The other challenge (the one to Crowell) may be good. But if we consider both of these challenges good, yet the Defendants waived all their objections to these jurymen by not trying to .get clear of them by peremptory challenge. The Record does not show that Appellants had exhausted their peremptory challenges, and until they do this they have no right to complain. Graham & Waterman on New Trials, p. 468. Whitaker *v.* Carter, 4 Iredell 461. See also Fish *v.* The State, 6 Mo. 426. This is a civil action, and a party may waive more than in a criminal case.

A third error is said to be the refusal of the Court below to allow witness, Hyde, to be asked in reference to whether he had any malice in destroying the property. I cannot see that this refusal was improper. Hyde had admitted that he had done the acts complained of, then, if such acts of destruction be not lawful, the law conclu-

sively presumes malice. (1 Greenleaf on Evidence, §18 and §24 and notes). This being true, Hyde had no right to state that he had no malice.

The other and last error referred to, is that the first instruction given on behalf of the Respondent was wrong. That instruction reads as follows: "That the Defendants, Jeter Clinton, John D. T. McAllister, Wm. Hyde, and Charles Crow, have admitted by their answers in this case that they destroyed the property of the Plaintiff, and in order to escape liability therefor, they must show that their acts in destroying it were lawful."

The Defendants all plead justification, and to sustain that plea, necessarily admit of the doing of the act complained of. Some of the Appellants elsewhere in their answers deny the doing of the acts complained of. Although some kind of justification might be pleaded and would not be inconsistent with this denial, yet this justification cannot stand in connection with this denial. One of them must be false. This is a sworn answer, and in California it is said in one case, that "a sworn answer should be consistent in itself, and should not deny in one sentence what it admits to be true in the next," and "the object of sworn pleadings is to elicit the truth, and this object must be entirely defeated if the same fact may be denied and admitted in the same pleading." Hensley *v.* Tartar, 14 Cal. 508. And in the case of Fremont *v.* Seals (18 Cal. 433) it is held that where the admissions in an answer negative its general denials, the latter may be disregarded, where the answer is verified. This would be, to my mind, sufficient authority for sustaining the Court below upon this point. But we can go further and say that the answers (except Crowe's) expressly say that they did do the act complained of, and say so in their pleas of justification, and now in effect say so, or else the plea of justification is worthless. McAllister and Hyde say that they were commanded by a writ to destroy the property, and that they executed the command as they had a right and it was their duty to do. Jeter Clinton says that he issued the writ "as it was his duty to

29

do"—to abate said house—and "that the wrongs and injuries herein justified are the same wrongs and injuries complained of by the plaintiff." These are in my mind express admissions. Here, then, we find inconsistent positions taken in the cause of defense. Both positions taken by Defendants cannot be true, and a pleading should always be taken most strongly against the pleader. This is a long settled rule.

Upon the whole case, therefore, for the reasons given above, I am unable to unite with the majority of the Court in reversing the judgment of the Court below.