FRANK PATTERSON v. THE STATE.

1. In a criminal case the record need not show that a copy of the indictment and a list of jurors was served on the defendant as required by the statute. If the defendant proceeded to trial without objection on this account, the presumption against him is conclusive that copies were duly served.

2. It is not a ground of exception that some of the general panel of jurors failed to answer to their names when the case was moved for trial. The statute requires that the forty-eight jurors shall be summoned for service, and that a list of them shall be served on the defendant. It does not require that all the jurors shall be present when the case is moved.

3. The court has power to excuse jurors for good cause.

4. It is within the discretion of the court to determine the order in which the right to challenge shall be exercised by the state or by the defendant, and no exception lies to the exercise of that discretion.

5. It was not error in the trial court to order the sheriff to have present in court, on a future day, the requisite number of qualified jurors to serve as talesmen.

6. It is not necessary to select talesmen from those actually present in or about the court-room. The officer may go out into the county and summon them.

7. There was no error in ordering the tales, when three of the original panel of jurors had not appeared and answered to the call of their names.

8. A defendant is entitled to two days' service of the tales. The proper practice is, unless service is waived in open court, to adjourn the cause for the purpose of making service.

9. The tales having been duly served in this case, it was not a legal ground of exception that three of the talesmen did not answer to their names when the trial proceeded.

10. It is not a ground of exception that one of the talesmen is exempt from jury duty. That which exempts, but does not disqualify, is no cause for challenge.

11. The general panel of jurors for the term must be drawn in the presence of the Court of Common Pleas. In Monmouth county the presence of three judges is necessary to constitute the Court of Common Pleas.

12. The judge of the court having, under our statute, the duty to try challenges, his finding upon questions of fact involved in a challenge is conclusive. His decision is reviewable only when he makes a mistake in principle in determining whether a challenge shall prevail.

13. The fact that a juror had served in another case of the state against the same defendant, at the same term, and that he had formed an opinion in that case, is not sufficient to sustain a challenge by the state.

In error to the Monmouth Quarter Sessions.

Argued at February Term, 1886, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL, KNAPP and PARKER.

For the plaintiff in error, *Wm. T. Hoffman* and *R. T. Stout.*

For the defendant, *Chas. Haight* and *John W. Swartz.*

The opinion of the court was delivered by

VAN SYCKEL, J. The defendant below was convicted in the Monmouth Quarter Sessions of forgery. During the progress of the trial many exceptions were taken for alleged errors in the proceedings, which constitute the grounds upon which a reversal of judgment is asked for.

In the early days of English criminal jurisprudence, when even a trifling larceny was punishable with death, there was reason why the judicial mind should exhaust its ingenuity in aid of the defence, and seize upon every technicality to avert from the prisoner a punishment so disproportionate to his crime. In our time a more humane system of criminal law has been adopted, which graduates the punishment according to the magnitude of the offence, and in which there is nothing to shock our sense of justice. The reason for resorting to mere technicality to enable the criminal to evade the sanctions of the law no longer exists, and the practice to which that reason led should therefore cease. Men who make their lives a scourge to society must answer its violated laws, and can justly demand, in a judicial tribunal, nothing except a fair trial according to the laws of the land, in which no substantial right is denied them. The legislation of our state has given expression to this view in the eighty-seventh section of the Criminal Procedure act, in the following language:

" No judgment given upon any indictment shall be reversed for any imperfection, omission, defect in or lack of form, or for any error, except such as shall or may have prejudiced the defendant in maintaining his defence upon the merits."

It is of the utmost importance to society that its criminal classes shall understand that the penalty surely follows the crime.

With these convictions I enter upon the consideration of the questions involved in this controversy.

The Criminal Procedure act provides that the defendant shall have a copy of the indictment and a list of the jury two entire days at least before the trial, and that he shall not be put upon his trial without his consent, deliberately expressed in open court, unless he has had such jury list duly served.

The first error assigned is that the record does not show that a copy of the indictment and list of jurors was served as required by the statute.

The answer is that the record need not show compliance with the statute in this respect. The presumption is that all

things were rightly done. The defendant knew his rights, and if he proceeded to trial without objection on this account, the presumption against him is conclusive that the copies were duly served. If, by the record, it appeared that he had objected on that ground in the trial court, and it had there appeared that the jury list had not been served, it would be essential to the validity of the judgment that it appear of record that the defendant's consent to be put upon trial was deliberately expressed in open court.

In this respect no error is apparent. Intendment will be made against the party excepting and in favor of the judgment. *Powell on Appellate Jur.*, *p.* 129, § 21.

The second assignment of error is that the facts set forth in said cause do not constitute any crime committed against the laws of the state.

The point made is that the evidence did not justify conviction; that the jury should have resolved the doubt in the case in favor of the defendant and rendered a verdict of acquittal. That question cannot be considered on a writ of error. If the premises are well founded, it constituted good ground for an application for a new trial. There was sufficient evidence to go to the jury, and it was submitted with proper instructions by the court.

The third assignment of error is that the court allowed the call of the jury to proceed before all the jurors were present and without a full list thereof.

The record shows that after the challenge to the array was overruled the court ordered the list of jurors to be called. Upon the call six jurors did not answer.

The counsel of defendant objected to proceeding until all the jury were present. The objection was overruled, and the names of the forty-eight jurors summoned were put in the box, from which the jury for this cause was drawn.

If it is necessary that every juror of the forty-eight summoned for service at the term should be present in court when a case is called for trial, it would be quite impossible to conduct the prosecution of criminal trials successfully. Our

statute requires only that the list of forty-eight jurors be served. It does not require that all the jurors shall be present when the case is moved. The language of the section, with respect to a tales, clearly shows that the presence of all is not essential. It provides that if by reason of challenges, or the default of jurors, or otherwise, a sufficient number cannot be had of the original panel to try the issue, a tales may be awarded.

The power of the court to excuse a juror from the general panel for cause is recognized in this as well as in other states. *Smith* v. *Clayton*, 5 *Dutcher* 358 ; *Ware* v. *Ware*, 8 *Me.* 42 ; *State* v. *Ward*, 39 *Vt.* 230.

As the fourth ground for reversal the defendant assigns for error that the court below refused to direct that the state should challenge first.

On the trial of a capital case, reported in *Commonwealth* v. *Piper*, 120 *Mass.* 185, it was held that it is within the discretion of the court, in the absence of statutory regulation or a general rule of court, to determine the order in which the right to challenge shall be exercised by the state or by the defendant, and no exception lies to the exercise of that discretion. The same rule has been adopted in other states, and I deem it to be well founded in reason. *State* v. *Pike*, 49 *N. H.* 399, 406 ; *Manuf. Co.* v. *Canney*, 54 *N. H.* 295 ; *Schufflin* v. *State*, 20 *Ohio St.* 233.

The next alleged error is that the court ordered the sheriff to summon forty-two qualified jurors to serve as talesmen in said cause on the following Monday.

It has long been settled, both in England and in this country, that it is not necessary to select talesmen from persons accidentally present in court; they may be persons whose presence the sheriff has taken previous means to obtain. 5 *Bac. Abr.* 337, *tit.* " *Juries*," *D ; Rex* v. *Dolly*, 2 *Barn. & C.* 104.

*State* v. *Allen*, 47 *Conn.* 121, was a capital case. The court, before the trial commenced, ordered the sheriff to have in attendance men from whom talesmen could be chosen for

the trial of that cause. The court of review held that the sheriff might take talesmen from those in attendance or he might go outside, according to his discretion, and that there was no error in the court suggesting to the sheriff to have proper men in attendance.

In *United States* v. *Loughery,* 13 *Blatchf.* 267, Judge Benedict ruled that the marshal may select talesmen from those not present in or about the court-house, and that when they were returned by the officer they became bystanders, within the meaning of the statute.

*State* v. *Bird,* 14 *Ga.* 43, was also a capital case, in which the trial court directed the sheriff to send out into the county and have in attendance a large number of citizens to act as talesmen if necessary. The appellate court said it was not error, but, on the contrary, a commendable practice, calculated to secure a fair jury and prevent delay.

It is within the general power, which every court has, to arrange the order of business and provide for the probable necessities which may arise in the conduct of a trial.

This construction gives full effect to the language of our statute, which directs the sheriff to summon the tales from "the bystanders or others." There was no error in this direction to the sheriff. Nor was there error in ordering the tales, when three of the original panel had not appeared and answered to the call of their names. Nor can the defendant avail himself of the objection that of the forty-two talesmen summoned only thirty-nine appeared and answered to their names.

As has been before stated, the law requires only that the tales as well as the original panel shall be summoned and the list served. The presence of every juror when the list is called is not essential.

It is also assigned for error that the court below ordered the sheriff to serve the list of talesmen on the defendant not later than Saturday morning, July 11th, at half-past nine, and that the trial was proceeded with on Monday morning, July 13th.

Patterson v. State.

In *State* v. *Aaron*, 1 *South.* 232, the right of the prisoner to two entire days' service of the tales was recognized. The proper practice now is, unless service is waived in open court, to adjourn the cause for the purpose of making service.

In the case before us, although the order of the court was that service might be made as late as Saturday morning, it was in fact made on Friday evening, July 10th, two entire days before the trial proceeded, and therefore the defendant had no legal ground of complaint in that respect.

A further error is assigned that the sheriff did not return qualified jurors to serve, one of said jurors being exempt by law from jury duty. The juror in question was duly qualified to serve, but had a right, on his own motion, to be excused from service. That which exempts, but does not disqualify, is no ground for challenge. 1 *Arch. Cr. Prac.* 549.

The next assignment of error is the refusal of the trial court to sustain the defendant's challenge to the array. The challenge interposed was made on the ground that the Court of Common Pleas, before which the general panel of jurors was drawn for the term, was not legally constituted. In this respect the statute (*Rev., p.* 533, *pl.* 44,) is mandatory ; in other respects it is directory, except as to the certificate. *Poulson* v. *Union National Bank*, 11 *Vroom* 563.

The challenge interposed in writing was that Judge Hendrickson was not present at the drawing of the jury, and that but two judges were present, and also that but two judges signed the certificate. This the defendant offered to prove. The record before us shows that this offer of the defendant was overruled. We must therefore assume the fact to be that but two judges were present.

Did a duly-constituted court certify to the return of the general panel of jurors ?

In this case only two judges of the Court of Common Pleas were present when the panel of jurors was drawn and certified. The *Laws of* 1869, *p.* 681, § 1, provide that the Court of Common Pleas for the county of Monmouth shall consist

of four judges in addition to the justice of the Supreme Court holding the circuit in said county.

The *Laws of* 1873, *p.* 428, in order to explain the true construction of the above act, " in respect to the number of judges necessary to constitute the courts of Common Pleas, General Quarter Sessions and Orphans' Court of said county," provide that any two of said judges shall be sufficient to make and constitute the Court of Quarter Sessions, and any three of said judges shall constitute the Court of Common Pleas.

These are special laws, but they were passed before the constitutional amendments prohibiting special and local legislation, and therefore to constitute a Court of Common Pleas in Monmouth county the presence of three judges is indispensable, unless this special legislation has been repealed.

The state claims that the act of April 5th, 1878, (*Pamph. L., p.* 315,) and the act of March 11th, 1880, (*Pamph. L., p.* 240,) must be held to have that effect.

The former act provides " that hereafter the number of lay judges of the Inferior Court of Common Pleas shall consist of two in those counties having a law judge, and of three in all other counties; provided, this act shall not apply to counties having a population of more than fifty thousand inhabitants according to the last census."

The latter act provides, first, " that no further appointments of lay judges of the Inferior Courts of Common Pleas in the respective counties of this state, shall be made until the number of such judges shall be reduced to two in counties having a law judge, and three in all other counties ; and thereafter there shall be but two lay judges of such court in counties having a law judge, and not more than three lay judges in all other counties."

Second. " That any action of said court requiring the concurrence of three judges shall be valid and effectual when concurred in by a majority of the judges of said court."

It is not necessary to decide whether this general legislation applies to Monmouth county. Conceding that it does, it in no wise affects the requirement of the special law that three

judges must be present to constitute a Court of Common Pleas in Monmouth county.

The utmost effect that can be given to the second section of the act of 1880 is, that when the court is legally constituted—that is, when in Monmouth county three judges are present—any act theretofore requiring the concurrence of three judges will be valid if concurred in by a majority of the judges. ·

The certification of the general panel of jurors was not the act of the Court of Common Pleas, the panel not having been drawn in presence of a lawful court, and therefore the trial court erred in overruling the challenge of the defendant to the array.

The remaining questions to be considered relate to challenges to the favor. At common law, upon the trial of such challenges, the finding of the triers as to facts was not reviewable. The functions of the triers being, by our statute, vested in the trial court, the finding of the judge upon questions of fact involved in a challenge are conclusive. The decision of the judge is the subject of exception only when he makes a mistake of principle in determining whether the challenge shall prevail. Under a system of criminal jurisprudence, which shields a defendant by the presumption of innocence, by a liberal right of peremptory challenge and by the necessity of a unanimous verdict to convict, courts of review should not be astute to seize upon ground for reversal where the challenge by the state to the favor has been successfully made. There should be very clear error to constitute a mistrial.

The state challenged Sidney H. Sproul to the favor.

It appeared that at the same term he had served as a juror in another case of the state against the same defendant, Patterson, in which he had formed an opinion, but he stated that he knew nothing about the present case and supposed he could try it according to the evidence. Two other jurors were challenged by the state for like cause, and the challenges were sustained by the court.

"It is no legal objection to a juror that he had been one of the jury in another cause against the same defendant for a different offence." *United States* v. *Watkins,* 3 *Cranch C. C.* 443.

The fact that jurors have tried and convicted a defendant of a crime does not disqualify them from sitting as jurors in the trial of another indictment against him for a similar offence at the same term. *Commonwealth* v. *Hill,* 4 *Allen* 591 ; *Thomp. & Mer. on Juries* 194, 195.

In sustaining these challenges the trial court erred.

The state also challenges William J. Johnson to the favor, because it appeared that the defendant is a brother to one Austin Patterson, and that the said Austin Patterson and the father of said Johnson married sisters. This was no legal ground of challenge and it was erroneously sustained.

The defendant challenged John S. Hubbard to the favor, because he was tenant in common of certain real estate with two of the endorsers on the promissory notes alleged to have been forged by the defendant. This challenge was properly overruled.

For the reasons given, the judgment must be reversed and a new trial ordered.