OF THE

## STATE OF IOWA

AT

## DES MOINES, JANUARY TERM, 1912.

AND IN THE SIXTY-SIXTH YEAR OF THE STATE.

---

R. H. SUTTON, JESSE COX, L. E. OVIATT, W. W. BENE-
DICT, MRS. A. M. KENIGSBERG, E. A. MOORE, MARTHA
BRAMMER and JOSIAH HENDERSON, Appellants, v.
P. H. MENTZER, CHAS. ALDRICH, J. M. McCLONE, A.
W. JONES, H. A. RAWLINS, Councilmen, and O. H.
FRINK, Mayor of the City of Shenandoah, Iowa, and
D. M. CREAL, County Treasurer, Defendants, Appel-
lees.

**Municipal corporations:** PASSAGE OF ORDINANCES: YEAS AND NAYS.
1 The statute relating to the passage of an ordinance requires that
the yeas and nays shall be called and recorded: So that the
record of its passage showing simply that the mayor and all
members of the council were present and that the ordinance was
put upon its passage by a third reading and adopted is not a
compliance with the statute.

VOL. 154 IA.—1.

**Same:** ORDINANCES: COLLATERAL ATTACK. The introduction of the records of the city showing that an ordinance was never legally adopted because of failure to comply with the statutory requirements is not a collateral attack upon the ordinance, but is matter purely defensive to a claim made under the ordinance.

**Same:** ESTOPPEL. Where the city had never misled abutting owners by doing anything to their prejudice or otherwise, it was not estopped to claim that an ordinance vacating part of a street was never legally adopted.

**Same:** PASSAGE OF ORDINANCES: YEAS AND NAYS. Where the record of the city council shows that the mayor and six councilmen were present, and that on motion the rules were suspended and an ordinance put on its passage by the vote of five councilmen named as voting yea and that there was none voting nay, the statute requiring that the yeas and nays shall be called and recorded was complied with, although it did not recite that the yeas and nays were in fact called.

**Same:** ASSESSMENT OF ABUTTING PROPERTY. The adoption of an ordinance vacating a portion of the side of a street, followed by its improvement and continued use for street purposes, will not affect the right of the city to assess adjacent property as abutting, the strip never having been actually severed and appropriated to any purpose other than use as a street.

Weaver, and Sherwin, JJ., dissenting in part.

*Appeal from Page District Court.*—HON. W. R. GREEN, Judge.

FRIDAY, JANUARY 19, 1912.

ACTION to enjoin the collection of costs of paving a street apportioned to and assessed against the several lots of plaintiffs. On hearing, the petition was dismissed, and plaintiffs appeal.—*Affirmed.*

*Earl R. Furguson* and *C. R. Barnes,* for appellants.

*D. L. Wilson,* for appellees.

LADD, J.—Maple street, in the city of Shenandoah.

from Fifth avenue to Summit avenue, was paved fifteen feet on each side the center and the costs apportioned and assessed against the lots along said street.

The validity of the proceedings under which this was done is not questioned by the plaintiffs otherwise than in contending that their lots against which portions of the costs were levied do not abut said street. As platted, this street was eighty feet wide from Fifth avenue south to the alley between Eighth and Ninth avenues, and was sixty feet wide from Fifth avenue north a half block, and from said alley south to Summit avenue, the street next below Ninth avenue. An ordinance alleged to have been passed by the city council in 1888 was in words following:

"Section 1. That for the purpose of reducing Corn street in Priest's addition to uniform width, thereby promoting the public interests of the resident inhabitants of said street, ten (10) feet off of the west side of said street commencing at the northeast corner of lot No. one hundred and thirty-seven (137), the same being immediately south of the junction of Sixth avenue and Corn street and running thence south to the section line be, and the same is hereby vacated."

Another ordinance alleged to have been enacted in 1901 reads:

"Section 1. That the ten (10) feet strip on the east side and the ten (10) feet strip on the west side of Maple street, formerly Corn street, commencing at the north line of Priest's addition running thence south to the city limits, be and the same is hereby vacated and the title to said strip vested in the owners of property abutting on the same as provided by law.

"Section 2. That the city of Shenandoah, Iowa, hereby quitclaim to owners of property abutting on said ten (10) feet on each side of Maple street, formerly Corn street, properly belonging to the respective pieces of property abutting thereon as provided by law."

The design of these ordinances seems to have been to render the street of uniform width of sixty feet, but, as it was only sixty feet wide north of Fifth avenue and south of the alley between Eighth and Ninth avenues, if valid, they reduced the width of the half block north of Fifth avenue and from the alley mentioned south to Summit avenue to forty feet in width, and from Sixth avenue to said alley to fifty feet. The contention of appellants is that, as these strips which the ordinance purported to vacate lie between the portions of the street remaining and the lots against which the cost of the paving was assessed belonged to the city, the plaintiffs' lots can not be said to abut the street, and for this reason are not assessable for such cost. Were the city using these strips as private property, the owners of these lots would doubtless be in court, contending that this might not be done without first compensating them for the injury occasioned by cutting off access to their lots from the public streets. See *Ridgeway v. City of Osceola,* 139 Iowa, 590. Any purpose to so use them has never been manifested, and for fifteen or twenty years the street has been used as a sixty-foot street, and improved accordingly. Even the owners of lots along the street have acquired them in the belief that they extended to the street line as maintained. Though the curbing previously had been laid, those on the east side had occupied and enjoyed their respective lots to such line up to the time of the pavement in question.

In disposing of the issues presented, the first inquiry is whether parts of the street were in fact vacated. The entire record of the city clerk's office bearing on the passage of the ordinance of 1901 is as follows: "The council met pursuant to adjournment at 8:30 p. m., the mayor and all the council and clerk present. Ordinance No. 51, relating to quitclaiming of the ten-foot strip on each side of Maple street in Priest's First and Second additions, hav-

1. MUNICIPAL CORPORATIONS: passage of ordinances: yeas and nays.

ing passed its first and second readings at a previous meeting, was, on motion of Mr. Palmer, put upon its passage by a third reading and adopted." Though it is said that all members of the council were present, their names are not recorded, nor are those who voted for or against the passage of the ordinance and whether the vote was unanimous does not appear. Plainly enough this was not in compliance with the statute exacting that "the yeas and nays shall be called and recorded," construed to be mandatory, and the want of a sufficient record to indicate that the ordinance was passed or adopted was affirmatively proven. *Cook v. City of Independence,* 133 Iowa, 582; *Markham v. City of Anamosa,* 122 Iowa, 689; *Marion Water Company v. City of Marion,* 121 Iowa, 306.

II. But appellants say that this is a collateral attack on the ordinance, and not permissible in this action. Precisely what is meant is not clear. Of course, in actions to enforce ordinances, parol evidence is not admissible to vary or contradict the record of their passage. *Town of Eldora v. Burlingame,* 62 Iowa, 32. Nor may the regularity of organization of the municipality passing them be questioned in defense against their enforcement. *Town of Decorah v. Gillis,* 10 Iowa, 234. And, where the power to vacate a street is conceded, doubtless the manner of the exercise of that power must be controlled through proceedings by certiorari rather than in equity. *McLachlan v. Town of Gray,* 105 Iowa, 259. But here neither the correctness of the record nor the power of the municipality was brought in question. To prove the vacation of a strip of ground ten feet wide on each side of the street plaintiffs introduced in evidence the pretended ordinance. In response, defendants adduced the city clerk's record demonstrating that such pretended ordinance never was enacted, for that certain formalities declared essential by statute were not observed. The proof did not assail an ordinance, but established that

2. SAME: ordinances: collateral attack.

alleged had never become an ordinance and was purely defensive.

The city has not misled plaintiffs by anything done to their prejudice or otherwise, and, for this reason, there is nothing in the argument that it is estopped from asserting the ordinance was never legally adopted. The printed revision of ordinances purports to no more than collect ordinances previously adopted, and, of course, does not validate those not previously passed. It follows that no portion of the street was vacated in 1901, and this disposes of the controversy as to all of the plaintiffs, except L. E. Oviett, for their lots abut only the strips alleged to have been vacated by the pretended ordinance of 1901.

3. SAME: estoppel.

Oviett owned lots 212 and 213, lying on the west side of Maple street and fronting on Eighth avenue, and, if the ordinance of 1888 was valid, it vacated on paper a strip ten feet wide along the east line of lot 213 extending lengthwise on that street. The city clerk's record disclosed that the mayor and six councilmen were present. Motion was made by one of these that the rules be suspended, and the ordinance be put on final passage. The names of five councilmen voting yea were recorded and nays none. It was then moved that the ordinance be adopted and the names of the same five were recorded as voting yea and none nay. This seems full compliance with the statute. The objection that the record does not disclose that the yeas and nays were called is not well taken. That this was done is clearly to be implied from the recital of how each councilman voted. Not otherwise could this have been ascertained and recorded.

4. SAME: passage of ordinances: yeas and nays.

As seen, this ordinance was enacted nearly twenty years ago. Since then the city has treated the line thirty feet west of the center of the street as the boundary between the lots abutting and the street. It has required the lot owners to construct cement sidewalks along that line, and

has estalished parking, caused curbing to be done and paving to be laid according to that line, and on the theory that the lots extended to it.

**5. SAME: assessment of abutting property.**

On the other hand, the lot owners have acquired the lots on the supposition that they extended up to that line, and may have improved them accordingly, though as to Oviett's lots this does not appear. If the city might have claimed the strip as private property, it has never asserted any right thereto.

Nor might it actually have vacated this portion of the street without compensating abutting lot owners, for this would have cut off access to their properties. See *Ridgeway v. City of Osceola, supra.* As there has been no appropriation by the city to a private use, it is not to be presumed that such compensation has been made.

Of course, the lot owners could acquire no interest therein by adverse possession and the doctrine of acquiescence is held not to apply to street boundary disputes in which a municipal corporation is a party. *Quinn v. Baage,* 138 Iowa, 426. Nor is there anything to show that these lots (Oviett's) have been so improved that the city was estopped from asserting claim to the original boundary of the street. The situation is such as to leave no doubt, but that the city did nothing more than adopt the ordinance, and subsequently laid no claim to the strip it purported to vacate other than it had previously.

Manifestly, the effect of the ordinance was not otherwise than an indication of the line to which the city proposed to improve the street. Without the ordinance, it might have treated the strip as it did. That it adopted the ordinance and then proceeded to improve it, as might have been done without so doing, can make no difference. Notwithstanding the ordinance, the strip of land has not been devoted by the city to any purpose other than that to which it was dedicated, and could not have been without compensating the lot owners, and we know of no reason

why the city, if it shall so elect, may not make use of it
for street purposes whenever it shall choose. Surely it can
not appropriate it for private purposes without compensat-
ing the abutting owners, and, as it is necessarily impressed
with the public use, we can see no ground for not saying,
that, notwithstanding the passage of this paper ordinance,
it is actually held by the city as a part of this street. The
facts of the case do not bring it within *Smith v. Des
Moines,* 106 Iowa, 590, and like decisions. The strip has
not been actually severed from the street and appropriated
to other purposes, and, after the lapse of more than twenty
years, it is not to be inferred that such was the design in
enacting the ordinance. The lots abut the street as it actu-
ally exists, and, if the city permits the owner to occupy a
portion of it, he is not in a situation to complain.

The decree of the court has our approval, and is
*affirmed.*

WEAVER, J.—I concur in the result announced, but
can not agree that the street remains of its platted width
of eighty feet, or that the city may at any time assume
possession and control of the strip or margin which it un-
dertook to vacate by the ordinance of 1888. Such a hold-
ing I regard as extremely unfortunate, and an invitation
to future trouble and expense for the property owners. It
is conceded by the majority that the ordinance of 1888
was regularly enacted, but it is said it did not make an
effective vacation because no provision was made for com-
pensation which the owners of abutting property would be
entitled to demand on the theory that such vacation had
the effect to cut off their access to the street. But does
any such damage necessarily result from the vacation pro-
vided for in this ordinance? If the city had acquired
title to the full eighty feet in width and desired to vacate
ten feet on one or both sides, reducing the street to a
width uniform with its other streets, it could waive its

right or title to such strips in favor of the adjacent prop-
erty, thereby in effect extending the front of the several
abutting lots to the line of the street.    That such was the
intention is made perfectly clear by the city's attitude with
respect to this street and, the abutting property for more
than twenty years.    The ordinance of 1901, though ineffec-
tive as an ordinance because of a defective record, is very
significant evidence in confirmation of the theory that the
city intended to waive and relinquish any and all claim
it might have had to such strip.    The act of the city in
occupying and improving the street to a width, of sixty
feet only, and its assertion of right to pave the narrowed
street at the expense of the abutting lots, not only affords
additional confirmation of that purpose, but constitutes an
effectual estoppel against any subsequent claim of right or
title to the ten-foot strips.    There is still another and even
more cogent reason for my conclusion that the city has and
can assert no title to the ten-foot strip adverse to the lot
owners.    The street in question is not one which owes its
existence to condemnation or purchase by the city.    It was
originally dedicated to the public by the proprietors of the
plats of which the lots now under consideration were part.
The city was under no obligation to accept such dedication
to its full width of eighty feet.    It could elect to accept
and improve the central sixty feet only, thus making it.
correspond with the others of its established streets, and
leave the rejected ten feet on either side to become attached,
and to be treated as part of the adjoining lots.    Such re-
jection or vacation would not cause such strip to revert
to the original proprietors of the plat, for they had sold
and conveyed the lots as fronting on this street, and they
could not be heard to assert a title or claim the effect of
which would be to destroy such access to the public way.
*Day v. Schroeder,* 46 Iowa, 546.    That a city, by its man-
ner of using and improving a dedicated street, may be held
to have accepted only a part of its plotted width is well

settled. See *Bell v. Burlington,* 68 Iowa, 296; *Johnson v. Burlington,* 95 Iowa, 197. In the *Bell* case, this court said: "The acceptance of the grant by the public was quite as essential to the establishment of the highway as was the dedication by the owner of the soil. It was not bound, however, to accept the whole of the grant. . . . It had the right to accept a portion of the ground dedicated and reject the remainder. The evidence of its acceptance of the dedication and of its intention in the premises is found in its acts and conduct with reference to it." Applying that test to the present case, I think it beyond reasonable question that the city never intended to accept the dedication of more than the central sixty feet of the street, and that for the purposes of paving such street and making assessment of the cost upon abutting property it could rightfully treat the unaccepted strips on either side as extensions or parts of the lots facing thereon. On this ground alone I would affirm.

SHERWIN, J., unites in the concurring opinion.