Argued September 13, reversed and remanded November 22,
petition for rehearing denied December 29, 1961

## SIMMONS *v.* HOLM ET AL

### 367 P. 2d 368

375

*Robert B. Duncan,* Medford, argued the cause for appellant. On the brief were Duncan, Brophy, Wilson & Duhaime, Medford, and Sherman S. Smith, Grants Pass.

*Hugh B. Collins,* Medford, argued the cause for respondents. On the brief were Collins and Redden, Medford.

Before ROSSMAN, J., presiding, and PERRY, SLOAN, O'CONNELL, GOODWIN and BRAND, Justices.

BRAND, J.

This is an action for damages for personal injuries

brought by the plaintiff, Carroll Simmons, a minor, by his guardian, against defendants Holm and Voland. Upon trial, verdict and judgment were for the defendants. Plaintiff appeals, and assigns 21 alleged errors.

The Engler-Huson Company, a corporation, was also a defendant, but the trial court granted a nonsuit as to it, and plaintiff has not appealed. We are not therefore concerned with the case against that defendant.

The complaint alleges the enactment by the city of Grants Pass of ordinances numbered 1130, 1133, 194 and 281, setting them forth by title and stating that they were in effect "at all times herein mentioned." All allegations concerning the said ordinances are denied except that defendants admit that ordinance 281 was approved on 10 April 1907. The contents and effect of these ordinances will be considered later.

It is alleged that on the 11th day of June, 1958, the plaintiff, 14 years of age, was riding his bicycle in an easterly direction upon E Street, a public highway, in the city of Grants Pass "at a point where said E Street is intersected on the northerly side of said street by Dimmick Street;" which, "extending northerly from said E Street is a public highway." It is further alleged that defendants were then operating their Gerlinger lumber carrier in a northerly direction upon and across E Street, and that it ran over the plaintiff, causing serious and permanent injuries to plaintiff, which are described and which include the loss of a leg. The specifications of negligence are (a) want of proper control, (b) want of proper lookout, (c) excessive speed under the circumstances, in-

cluding "the hazard at said intersection." We quote the remaining specifications:

"d. The defendants caused said lumber carrier to enter a public highway from a private road or drive without stopping and yielding the right of way to all vehicles approaching upon said public highway, and particularly the bicycle operated by the plaintiff.

"e. The defendants placed and deposited piles of lumber approximately 16 feet high in E Street on the southwesterly side thereof which tended to detract from the safety of said public way.

"f. The defendants accumulated piles of lumber approximately 16 feet high in E Street on the southwesterly side thereof and thereby blocked E Street and the plaintiff upon his bicycle from the view of the operator of said lumber carrier."

The prayer is for $300,000 general and $10,000 special damages.

The answer is a general denial, except as admitted, and an affirmative plea that any injury to plaintiff was the result of his own negligence in that he rode at excessive speed, failed to maintain control, failed to yield the right of way to a vehicle on his right at an intersection of highways and failed to keep a proper lookout for other vehicles in or adjacent to said intersection. The reply was a general denial.

The specification in the complaint to the effect that the defendants operated their lumber carrier without keeping a lookout was withdrawn by the plaintiff. Specification "e" quoted supra, was withdrawn by the court as too indefinite. The cause went to trial on the remaining issues.

E Street and Dimmick Street in Grants Pass, as originally platted, run at right angles to each other, and although they do not run due east and west or

due north and south, we shall, for convenience, refer to E Street as running east and west and to Dimmick Street, according to the original plat, as running north and south.

On 11 June 1958 the plaintiff and his friend, Scotty Stevens, were riding their bicycles east and were coasting down the E Street hill as they approached the intersection as platted, of E Street and Dimmick Street. The defendants, by their employee, had been operating a Gerlinger lumber carrier, popularly called a "straddle buggy", which is used in picking up, moving and replacing piles of lumber. Prior to the collision, the carrier was within the platted area of Dimmick Street, south of the south line of E Street. It started north and continued into E Street for the purpose of crossing it and picking up a load of lumber, which was in the area on the northeast corner of E and Dimmick Streets. The collision occurred not only within the platted intersection of E Street and Dimmick Street, but also within the narrower portion of E Street, which alone was available for vehicular traffic.

The unique feature of this otherwise common type of collision case is found in the fact that the plaintiff contends that the platted portion of Dimmick Street south of the south line of E Street had long since ceased to be a street and was private property, while the defendants contend that such area was still a public highway. Thus, the plaintiff contends that the rules of law governing the conduct of the parties were those applicable in the case of a collision between a vehicle, to-wit, a bicycle, traveling east on a highway and a northbound vehicle entering the highway from a private way. Plaintiff therefore relies on ORS 483.206 which, so far as relevant here, provides that

"The driver of a vehicle entering a public highway from a private road or drive shall stop and yield the right of way to all vehicles approaching on such public highway, * * *." Plaintiff argues that it was the defendants' duty to stop and yield the right of way to the plaintiff.

Defendants, on the basis of their claim that Dimmick Street south of E Street was a public highway, rely upon ORS 483.202 which, so far as relevant here, provides that "Drivers, when approaching highway intersections, shall look out for and give right of way to vehicles on the right, simultaneously approaching a given point, whether such vehicle first enters and reaches the intersection or not. * * *" Hence, they claim that it was the duty of the plaintiff bicyclist to look out for and give right of way to the defendants' carrier, as a vehicle on a public highway approaching an intersection and being the vehicle on the right.

The primary contention of the plaintiff is that the portion of Dimmick Street south of the south line of E Street, according to the original plat, was vacated by Ordinance No. 194 of the city council of Grants Pass, and it thus became and remained the private property of the abutting owners. This theory would appear to put the title, not in the lessee defendants Holm and Voland, but in their landlord, the Engler-Huson Company, which is no longer a party to this case.

At least six of the plaintiff's 21 assignments of error are based upon the contention that there was a valid vacation of Dimmick Street south of E Street, or on rules of law which are applicable only on the assumption that there was a valid vacation.

■ Our first question is whether Ordinance 194 was

ever adopted by the council. The defendants claim that it was not, for the reason that it never received a three-fourths vote of the council, as required by mandatory provisions of Article VII, Section 88 of the legislative charter. See Infra. At that time the city of Grants Pass was operating under a legislative charter, approved and effective on 16 February 1901 (Special Laws of Oregon, 1901, page 355, et seq). We take judicial notice of its provisions (ORS 41.410(3)). The charter thus enacted provided that the government of the city shall be vested in a mayor and common council, to consist of eight members, the mayor to have no vote except in case of a tie. Article III, Section 11.

Article VII, Section 83, provides that:

"A majority of the whole number constituting the council, as then provided by law, is a majority of the council or members thereof, within the meaning of this act, and not otherwise, unless expressly so provided. The concurrence of a majority of a quorum is a sufficient majority to determine any question or matters, except as in this act provided."

Article VII, Section 88, provides:

"Every ordinance shall be read three times, and may be read the second time by title only; but no ordinance shall be placed upon its final passage upon the day of its introduction, unless in case of an emergency, and upon the vote of three-fourths of the council; and each ordinance shall receive a majority vote of all councilmen-elect, which vote shall be taken by yeas and nays, and, after approval by the mayor, as otherwise by this act provided, shall be enrolled in the book of ordinances, and its passage certified to therein in full by the auditor and police judge. Said enrolled ordinances shall be received in evidence in all courts."

■ Reading Section 83 with Section 88, we conclude that an ordinance shall not be placed upon final passage upon the day of its introduction unless upon the vote of three-fourths of the whole number constituting the council, i.e., unless upon the vote of six members. If the word "council", as used in the phrase "a majority of the council" means the "whole number constituting the council" as provided in Section 83, then we would infer that the phrase "three-fourths of the council" which appears in Section 88 would mean three-fourths of the whole number constituting the council. If the statute meant three-fourths of a quorum, it would have said so.

■ The authorities support the proposition that the requirements of the charter, properly construed, defining the procedure necessary to suspend the rules, are mandatory.

"* * * Where it is prescribed by law that such rules cannot be dispensed with except upon a three-fourths vote or the like, such provision is generally held mandatory. * * *" McQuillin, Municipal Corporations, 3d ed, vol 4, § 13.33, p 495.

"* * * Thus, where a statute or charter requires a majority vote on a particular matter, or the reading of a motion on three different days, such requirements are mandatory and may not be disregarded by the council." Rhyne, Municipal Law, § 5-9, p 88. See, also, Rhyne, Municipal Law, § 9-3, p 229.

"* * * Although it has been held that the rules of procedure are merely directory and that they may be suspended by a municipal council acting as a legislative body, statutory or charter provisions prescribing the manner of enacting ordinances usually are considered mandatory. Thus, as a rule, the power of a municipal corporation to legislate must be exercised in the manner prescribed, or the enactment will be considered void

and set aside." 62 CJS, Municipal Corporations, § 416, p 798.

"* * * However, under some statutory or charter provisions, ordinances may not be passed on the day on which they were introduced or reported, or at the same meeting at which they were introduced, without the unanimous consent of the council or of those present at the meeting. Other statutes or charters provide that ordinances may not be passed on the same day on which they were introduced or within five days thereafter, or that an ordinance shall not be passed until ten days after the introduction thereof.

"The purpose of statutory or charter provisions relative to the time of passing ordinances is to prevent hasty, ill-advised legislation, and they have very generally been held mandatory, and a non-compliance therewith fatal to the ordinance. * * *" Id, § 417, p 800.

"* * * Nevertheless, the provisions of the statute for suspension of the requirement as to readings of the ordinance are mandatory and must be substantially complied with; otherwise there may be no valid suspension of the rules, and no valid enactment of ordinances without a compliance with the rules." Id, § 419, pp 803-4.

In *Safeway Stores v. Portland*, 149 Or 581, 603, 42 P2d 162, this court said:

"* * * The charter of the city is the organic law of the municipality and it bears the same relation to the ordinances of a city that the constitution of the state bears to the statute. An ordinance must be passed in the manner prescribed by the city charter." 2 McQuillin, on Munic. Corp., §§ 676 and 682.

See also, *Thompson v. Wingard*, 250 Ala 390, 34 So2d 606; *In re Lancaster City Ordinance*, 383 Pa 471, 119 A2d 307; *Tennent v. City of Seattle*, 83 Wash 108,

145 P 83; *Village of Warrensville Heights,* Ohio App 1954, 116 NE2d 837; *Sutton v. Mentzer,* 154 Iowa 1, 134 NW 108; *Swindell v. State,* 143 Ind 153, 42 NE 528.

While the cases are not uniform, there is substantial authority for the proposition that a specified percentage "of the council" means that percentage of the full membership. *State ex rel Rea v. Etheridge,* 122 Tex 18, 32 SW2d 828; *Griffin v. Messenger,* 114 Iowa 99, 86 NW 219; *Horner v. Rowley et al,* 51 Iowa 620, 2 NW 436; *Streep v. Sample,* Fla 1956, 84 So2d 586; *State v. Central States Electric Co.,* 238 Iowa 801, 28 NW2d 457.

The rule in these cases would support a conclusion that a vote of "three-fourths of the council" means three-fourths of the full membership, even in the absence of the provision of Article VII, Section 83, of the legislative act quoted supra.

We are satisfied that under the charter an ordinance could not be passed on the day of its introduction unless in case of emergency and upon the vote of three-fourths of the membership of the council. To be sure, this rule applies only if an ordinance is passed on the day of its introduction. Whether it was so passed in the pending case depends upon the legal effect of two exhibits, to-wit, plaintiff's Exhibit 45 and defendants' Exhibit I, both of which purport to set forth the ordinance vacating Dimmick Street south of the south line of E Street. We now consider those ordinances and their legal effect.

Subsequent to the date of the purported enactment of Ordinance 194, an ordinance was passed which changed the names of the streets with which this case is concerned. This is undisputed (See Defendants'

Exhibit D and Plaintiff's Exhibit 44). For convenience, therefore, we substitute the street names as they were at the time of the collision for those specified in Ordinance 194. Making the substitutions, we quote plaintiff's Exhibit 45, as follows, omitting the portions of the ordinance dealing with other streets with which we are not here concerned:

"An Ordinance to vacate parts of certain streets and alleys in Railroad Addition to the city of Grants Pass, Oregon. The City of Grants Pass does ordain as follows:

"That * * * and Dimmick Street from "F" Street North to "E" Street and * * * all in Railroad Addition to the City of Grants Pass, be and is hereby vacated and abolished; provided, that said streets and alleys shall revert back to the City of Grants Pass at any time the blocks or parts of blocks adjoining thereon shall cease to be used as a lumber yard.

"Approved this 17th day of July, 1902.
"W. F. Kresner, Mayor

"Attest: R. L. Davis
Auditor and Police Judge."

It will be seen that this exhibit sets forth only the number of the ordinance, the title, the operative words, dates of approval by the mayor and attestation by the auditor. It does not show when the ordinance was introduced or adopted by the council or what the vote was. There is nothing to show that the ordinance was passed on the day of its introduction and no showing that it required or received a three-fourths vote. Defendants then offered their Exhibit I which was received for consideration of the court, but which the court said should not go to the jury room. If used at all by the court it would have been as the basis for an instruction on the law. That exhibit sets forth the

identical matter shown in plaintiff's Exhibit 45, but adds the following portion of the record:

"* * * (June 5th, 1902) The foregoing ordinance was introduced by Councilman Herbert Smith, read the first time. Rules suspended. Read second time by its title, emergency declared. Rules suspended. Read third time and passed Ayes 5, Naes 0, Absent 3.

"Attest R. L. Davis Auditor & Police Judge of the City of Grants Pass."

Assuming that there is no legal obstacle to the consideration of this exhibit, the record shows the introduction and adoption of the ordinance on the same day (June 5th) and the action of the council in purportedly suspending the rules and declaring an emergency as required by the legislative charter, but also shows the failure to conform to the charter because only five councilmen out of eight were present and voted.

The plaintiff objected to defendants' Exhibit I, supra, and saved an exception to the court's ruling, but we find no assignment of error on account of its receipt.

Plaintiff's contention as to Exhibit I as shown in his brief is that it was inadmissible because defendants had not pleaded in their answer the facts showing that the ordinance was passed as an emergency measure without the required three-fourths vote. But defendants called to the court's attention Section 88 of the 1901 charter, which in addition to the requirement of a three-fourths vote for emergency measures, provides:

"* * * and each ordinance shall receive a majority vote of all councilmen-elect, which vote shall be taken by yeas and nays, and, after ap-

proval by the mayor, as otherwise by this act provided, shall be enrolled in the book of ordinances, and its passage certified to therein in full by the auditor and police judge. Said enrolled ordinances shall be received in evidence in all courts." Special Laws of Oregon, 1901, Article VII, Sec. 88, p 373.

■ It is submitted first that defendants, having denied the existence of Ordinance 194 might properly assume that the plaintiff, if he offered the ordinance in evidence, would introduce it as "enrolled in the book of ordinances" with "its passage certified to therein in full by the auditor," thus rendering it admissible in all courts. Had the plaintiff done this, no question of pleading by the defendants would have been involved. The ordinance as introduced by the plaintiff would have shown on its face its own invalidity. Since the plaintiff, with a degree of astuteness omitted the damaging part of the record, it seems to the court that defendants were entitled to show the incompleteness of the record by offering the remaining portions thereof defensively.

Under the peculiar facts of this case we think Exhibit I should have been received and given legal effect. The court took judicial notice of and received it, but being of the opinion that it could not be considered because not pleaded in the answer, he instructed the jury that Ordinance 194 resulted in a valid vacation of the street. Here the ordinance was brought into the case by the plaintiff, who pleaded it by title and date of approval only. Its existence was denied by the defendants' answer. The burden of proof was therefore on plaintiff. Are we to hold that the plaintiff, by failing to set forth the full record, can secure a ruling that the vacation ordinance was valid, when the balance of the record shows it was

never adopted, and are we to bar the defendants from showing the facts because they failed to plead a portion of the record which they had a right to assume would have been shown by the plaintiff? We think not.

Even if we were to disregard the provisions of Section 88 of the legislative charter as the prescribed method of proof of a valid ordinance, we would arrive at the same conclusion of invalidity. The court and the plaintiff appear to have confused the rules of pleading with the rules of proof. The plaintiff sufficiently pleaded the ordinance by title and date of approval. The problem is one of proof when the pleading is challenged by a general denial.

The trial court, in ruling that the defendants could not introduce Exhibit I because they had not pleaded it, relied specifically on *City of Stockton v. Frisbie and Latta,* 93 Cal App 277, 270 P 270, and plaintiff also strongly relies on that case. The case is not in point. In that case the plaintiff city alleged the passage of a zoning ordinance. The defendant demurred and contended on the demurrer that the ordinance was unconstitutional and that it was not made affirmatively to appear by the complaint that "the city council took the steps prescribed and required by section 4 of the act of 1917, supra, as a jurisdictional prerequisite to the exercise by said council of the authority to adopt and pass ordinances creating districts," etc. The court said:

> "* * * The prerequisites referred to are not prescribed by the charter of the city of Stockton. It was not, however, necessary in any event to plead those matters specially. Code Civ. Proc. § 459. That section provides that, in pleading 'an ordinance of a county or municipal corporation,

or a *right* derived therefrom, it is sufficient to refer to such * * * ordinance by its title and the day of its passage.' The complaint, in general terms, states the substance of the vital provisions of the ordinance, which sufficiently indicate the title, states the time of its passage, and further alleges that the measure was duly passed by the city council. Furthermore, the full text of the ordinance is annexed to the complaint, and, as before stated, by it expressly made a part thereof. Any irregularities in the passage of the measure, sufficient to invalidate it, constitute matters of defense." *City of Stockton v. Frisbie and Latta,* supra.

Obviously the plaintiff sufficiently pleaded the ordinance. A demurrer admits—it does not deny allegations of fact. The demurrer raised only questions of law. The case bears no resemblance to a case in which the existence of an ordinance is denied and the plaintiff introduces evidence tending to show its enactment but is met by an official record establishing that it was never passed.

The presumption of validity mentioned in *Garbade and Boynton v. City of Portland,* 188 Or 158, 214 P2d 1000, was applied on the question of constitutionality of an ordinance, not on the existence of the ordinance.

The trial court, and the plaintiff in his brief, relied upon the following from McQuillin:

" 'It is incumbent on a party who alleges the invalidity of an ordinance to aver and prove the facts that make it so. Moreover, he must specifically plead objections to the validity of an ordinance. A mere charge that an ordinance is ultra vires or unconstitutional is too vague. Its validity can be determined only on the issue or issues tendered by the pleadings.' 6 McQuillin 49, Sec. 20.21."

The defendants at bar did not "allege" the invalidity of the ordinance—they denied its existence.

We agree that one who sets up an ordinance as in a declaratory judgment suit, and seeks a judgment of its invalidity, must do more than allege generally its invalidity. He "must specifically plead objections to the validity." Again, we agree that if an ordinance is enacted pursuant to the procedural rules by the requisite vote, one who challenges its validity cannot merely allege that it is ultra vires or unconstitutional. He must specify his reasons. However, the section of McQuillin relied upon by the plaintiff contains the following:

"* * * Of course, in an action to enforce an ordinance, the defense may be set up that the municipal corporation had no power to pass the ordinance or that it was never legally enacted. Neither of such defenses is viewed as a collateral attack. * * *" 6 McQuillin, Municipal Corporations, 3d ed, § 20.14, p 33.

The case of *Sutton v. Mentzer,* supra, supports the text. In that case the court said:

"* * * Of course, in actions to enforce ordinances parol evidence is not admissible to vary or contradict the record of their passage * * *. But here neither the correctness of the record nor the power of the municipality was brought in question. To prove the vacation of a strip of ground ten feet wide on each side of the street plaintiffs introduced in evidence the pretended ordinance. In response, defendants adduced the city clerk's record demonstrating that such pretended ordinance never was enacted for that certain formalities declared essential by statute were not observed. The proof did not assail an ordinance but established that alleged had never become an ordinance and was purely defensive." *Sutton v. Mentzer,* 154 Iowa 1, 5, 6, 134 N.W. 108.

The very paragraph from McQuillin, quoted supra, (Sec. 20.21, p 49) continues thus:

"* * * The reason for the rule that a party must thus plead specifically his objections to the validity of an ordinance rests on the presumption of the validity of an ordinance in all respects."

But the author also holds that "the presumption of validity is not applicable with respect to the power to enact an ordinance." Section 20.07, page 18. From the same author, we quote:

"* * * Generally, there is no such presumption of validity of an ordinance as against the objection that no power existed under charter or statute to enact it. In other words, there is no presumption in favor of the validity of an ordinance where it is questioned on the ground of want of power to enact it; on the contrary, power to pass it must appear to have existed when it was adopted, if the ordinance is to be sustained. * * *" 6 McQuillin, Municipal Corporations, 3d ed, § 22.31, p 349.

"* * * Moreover, where the adoption of the ordinance is denied, its enactment and promulgation must be proved, to render it admissible in evidence, unless the necessity for such proof is waived." Id § 22.32 at page 352.

"* * * With respect to the power to enact an ordinance there is a difference of view as to the burden of proof, most authorities, however, regarding the burden as being on the one who relies on the ordinance, at least where objection is made that there was no such power." Id § 20.08, page 20.

From 64 Corpus Juris Secundum, Municipal Corporations, Section 1672, page 45, we read:

"Proceedings before municipal councils or boards to which the authority to vacate streets has been delegated must be in conformity with

the procedure, if any, prescribed by statute, and the record should show the existence of jurisdictional facts. \* \* \*"

See, *Bowers v. Machir,* Tex Civ App 1916, 191 SW 758.

■ Again, it is said that the presumption of validity concerning municipal procedure is not applicable with respect to the power to enact an ordinance. 6 McQuillin, Section 20.07, page 18. And see, 6 McQuillin, Section 22.31, page 349, and Section 22.39, page 369.

However, if a challenge to the power of a municipality to pass an act be deemed a collateral attack, we find that such attack is authorized:

"Collateral attack on an ordinance on the ground that there was no power to enact it has been allowed. Stating the same view negatively, it has been said that unless an ordinance is void in the sense that the city had no constitutional, statutory or charter authority to enact it, the ordinance can be questioned only by direct suit in the nature of a quo warranto proceeding or in a proceeding to which the state is a party. Accordingly, while an ordinance which the corporation has no power to enact, as one levying a tax for a purpose not authorized by the charter, is an act of usurpation and all proceedings under it are void, yet \* \* \*," etc. Id Section 20.14 at page 32.

See, *Sutton v. Mentzer,* supra.

There are other grounds for argument that the ordinance was never validly adopted, but we deem it unnecessary to consider them.

■ On a full consideration of all the issues presented, supra, we hold that the vacating ordinance was void and Dimmick Street south of E Street remained a public street.

Assignment of Error No. 1 reads as follows:

"The court erred in denying plaintiff's motion to withdraw from the consideration of the jury subparagraph (c) of the defendant's answer which reads as follows:

"(c) (Plaintiff) failed to yield the right of way to a vehicle on his right at an intersection of highways, * * *."

■ In view of our conclusion that Dimmick Street south of E Street was not vacated, it remained a public street and the issue concerning the duty of a driver of a vehicle to yield the right of way to a vehicle on his right was one on which it was necessary to instruct. The first assignment is without merit.

Assignment of Error No. 2. This assignment asserts error in the refusal of the trial court to instruct the jury that the area of Dimmick Street south of E Street was a private way. No error was committed in refusing so to instruct, since that area of Dimmick Street was not vacated.

Assignment of Error No. 3. Here the plaintiff complains of the refusal of the court to instruct the jury that the defendants had the burden of proving that, subsequent to the vacation, a public street had been established by adverse use. This assignment is subject to the same criticism as Assignments 1 and 2. The assignment presents no prejudicial error.

Assignment of Error No. 4. This assignment is without merit for reasons stated above. The instruction related to proof of highways by adverse use.

Assignment of Error No. 5. Exception is taken to an instruction given by the court which directed the jury to determine "what portion of the area South of the intersection * * * was at the time of the collision a private roadway or drive." This instruction

also could not be relevant to the case unless there was a valid vacation, in which event, and only in which event, the question of adverse use could arise.

Assignment of Error No. 6. Complaint is made of an instruction by which the court told the jury that a bicycle is a vehicle under Oregon law and that *"the plaintiff, while riding his bicycle on E Street, was entitled to the same rights and privileges, and subject to the same duties, given or imposed by law to all persons lawfully operating a vehicle upon a public highway,* insofar as this case is concerned." The exception taken reads as follows:

> "Plaintiff excepts to the court's instructing that this plaintiff was subject to all of the duties imposed by and the rights and privileges given by the motor vehicle code, on the grounds that said instruction subjecting the boy without qualification to the duties imposed ignores entirely the standard of care measured by the conduct of an ordinary prudent child of the same age, sex, experience, maturity and so on."

The plaintiff construes the instruction given as one which holds the infant to the standard of care of an adult and which applies against infants the rule that violation of a traffic law constitutes negligence per se. The defendants appear to have construed the instruction in the same way. The plaintiff proceeds to cite authority to the effect that at common law the conduct of a child is to be measured by the care which a child of the same age, experience and intelligence would reasonably be expected to exercise under similar circumstances. Plaintiff goes further and cites authorities which hold that the same rule is applied where a child's duty under the Motor Vehicle Code is involved, i.e., he argues that a child guilty of violating

a traffic statute is not to be found guilty of negligence per se, but is to be tested by the common-law rule.

Defendants, on the contrary, contend that when a statute does not exempt infants, it applies to them as fully as to adults, and consequently, that the violation by an infant of a traffic statute is negligence per se.

■ Passing for the moment the more difficult question as to negligence per se when applied to an infant, we hold that in the absence of breach of statute, the conduct of an infant is to be measured by that which a child of the same age, experience and intelligence would reasonably be expected to exercise under similar circumstances. *Schleiger v. Northern Terminal Co.*, 43 Or 4, 72 P 324; *Dubiver v. City Railway Co.*, 44 Or 227, 74 P 915, 75 P 693; *Russell v. Oregon R & N Co.*, 54 Or 128, 102 P 619; *Gigoux v. Yamhill County*, 73 Or 212, 144 P 437; *Cooper v. North Coast Power Co.*, 117 Or 652, 244 P 665, 245 P 317; *Forrest v. Turlay*, 125 Or 251, 266 P 229; *Maker v. Wellin*, 214 Or 332, 327 P2d 793, 329 P2d 1114.

■ Turning to the question as to the applicability of the rule of negligence per se to the conduct of an infant, we think that both reason and authority are opposed to the application of that harsh rule to infants. *Dubiver v. City Railway Co.*, supra, is cited by plaintiff. It is not directly in point for the opinion does not show that violation of a statute is involved.

Plaintiff cites *Maker v. Wellin*, supra. In that case it was alleged that the plaintiff rode his bicycle through a red light at an intersection. The trial court instructed the jury that violation of the statute would be negligence per se. The instruction at no place authorized the jury to take into account the plaintiff's

age, experience and intelligence. This court cited numerous cases supporting the rule that such circumstances should be considered in determining contributory negligence. The court referred to an annotation in 174 ALR at page 1084, which reviews the authorities and states that the majority rule is against the application of the negligence per se rule in the case of infants. The court also referred with approval to a discussion in 51 Dickinson Law Review at page 79 which persuasively argues against the application of the rule of negligence per se in the case of infants. The tenor of the opinion leans strongly toward the rule that infants are not chargeable with negligence per se in those cases, but the court refused to decide that question because it was not properly raised. The following authorities support the rule that an infant is not to be charged with negligence per se even though his conduct may involve violation of a statute which in the case of an adult would require the application of that rule: *Gottschalk v. Rudes,* Tex Civ App, 315 SW2d 361; *Rudes v. Gottschalk,* Tex Civ App, 324 SW2d 201; *Baldwin v. Hosley,* Ky (1959), 328 SW2d 426; *Morby v. Rogers,* 122 Utah 540, 252 P2d 231; 38 Am Jur, Negligence, § 206.5 (Supplement) and cases cited. See also, Restatement of Torts, Negligence, § 283(e) and § 464(2).

In approving the humane rule that a child is not to be barred from recovery as a matter of law because of violation of a traffic statute, we do not say that he is free from a general duty to obey the statute. We do say that the consequences which follow violation of statutes in the case of adults do not necessarily apply in the case of infants. The age, experience and intelligence of the infant are to be considered in determining whether he was guilty of contributory

negligence, even where he violated such a statute, but we recognize that there may be so clear a case of contributory negligence, even on the part of a child, as to warrant a court in finding him guilty of contributory negligence as a matter of law after consideration is given to age, experience, etc. See, Prosser, The Law of Torts, page 128.

■ This opinion is not to be construed as holding that a minor may not under other and different conditions be held liable for negligence per se. If evidence demonstrates that a minor, in view of his advanced age, education and experience, should be held subject to the standard of reasonable care applicable to adults, then it may also be true that his violation of a statute would constitute negligence per se. An illustration might be that of a minor licensed by the state to drive an automobile, who runs through a red light. Such a situation is not before us in this case, and we express no opinion upon it.

■ We found it necessary to consider the issues above discussed prior to our determination of the merits of Assignment of Error No. 6, supra. The instruction informed the jury that *"the plaintiff * * * was * * * subject to the same duties, given or imposed by law to all persons * * *."* So far as the duty imposed by law, i.e., by statutory law, is concerned, we find no error. The infant had a duty to obey the law. The instruction did not discuss the consequences of failure to obey the statute; it merely said he has a duty to obey. Negligence per se was not discussed.

■ As to the general common-law duty of reasonable care, we think that the instruction taken alone would be erroneous. True, the infant does have a duty

of reasonable care, and an adult has a duty of reasonable care, but the duty is measured by totally different standards; one, that of a reasonable adult, and the other, that standard reasonably to be expected of a child of the same age, experience and intelligence. However, we are required by a host of Oregon cases to consider instructions as a whole in passing upon specific objections. Oregon Digest, Annotated, Trial, § 295. Here the trial court gave a lengthy instruction on the measure of the duty imposed on children. We quote portions of that instruction:

"* * * I instruct you that a child is not held to the same standard of care as an adult, and is only required to exercise that degree of care which ordinarily is exercised by children of like age, mental capacity and experience. * * * if you find that said boy exercised such ordinary care as a reasonably prudent child of the same age and experience and intelligence would have exercised under the same or like circumstances, then such child is not chargeable with contributory negligence. * * * *"

It will be noted that nowhere did the court say that a child would be held guilty of negligence per se under any circumstances. On the contrary, the instruction quoted supra was obviously general in its application to any kind of contributory negligence, statutory or common-law.

In other instructions as to the duty of the plaintiff to exercise control, and as to the duty under the statute "to give due attention to traffic on his right," the court applied to the plaintiff "statutory duties" but qualified those instructions, as follows:

"* * * If you find that at or immediately prior to the time of the accident Plaintiff failed in any one of said things the law required of him, and

if he was negligent in that respect, bearing in mind the definition of negligence that applies to minors, then I instruct you that you must return a verdict in favor of Defendants and against the Plaintiff."

Taking all the instructions together, we think the court made it clear that the measure of a duty on the part of an infant was to be determined on the basis of his age, experience and intelligence, even in cases involving violation of traffic regulations. It would have greatly aided the understanding of the jury if the court had qualified the instruction by reference to the duty of infants, but we are compelled to hold that there was no prejudicial error in the instruction criticized by Assignment of Error No. 6.

At this point it becomes necessary to take note of the physical conditions at and close to the point of the collision, as shown by the evidence.

E Street and Dimmick Street, as platted, were 60 feet wide. Neither street was paved at the portions here involved. The traveled portion of each is comparatively narrow. Exhibit 20 is a plat prepared by a registered surveyor from his notes of a survey of the premises. The plat also shows the location of the lumber carrier after the accident and the location of three piles of lumber in E Street as they were at the time of the collision. These objects were located on the map in accordance with undisputed evidence. The plat is drawn to scale, one inch equalling five feet. The map was received in evidence without objection. In fact, the defendants rely upon it and assert that plaintiff is bound by it.

Both plaintiff's Exhibit 20, and defendants' Exhibit J, another plat, show a small wooden bridge on E Street at the intersection of E Street and the west line of Dimmick Street extended. About eight feet of

the bridge is actually east of the west line of Dimmick
Street extended. The bridge over which all traffic on
E Street was compelled to pass was only 20 feet wide.
Immediately east of the east end of the bridge, the
traveled portion of the street was further narrowed by
berry vines and weeds from three to five feet high
both to the north and south, so that the width of the
road was not to exceed eight feet.

According to defendants' Exhibit J, received with-
out objection, the traveled portion of Dimmick Street
north of the north line of E Street was about 20 feet
wide. In the southeast quarter of the intersection the
defendants had deposited three long piles of lumber
about a foot apart. The south end of these piles was
about 2½ feet north of the south line of E Street.
The piles were about 16 feet long, and, with the space
between them, occupied an area 12½ feet wide, east and
west, and 16 feet long north and south in the inter-
section. The piles were so high that the driver of the
carrier who rides, as he said, "6, 7, 8 feet" off the
ground, could not see over them. The driver's seat
is about six to eight feet back from the front of the
straddle buggy, according to his testimony. As the
driver started to cross the traveled portion of E Street,
he testified that the left side of the carrier was "3 to
5 or 8 feet" from the lumber pile which obstructed his
view to the west on E Street. We quote:

"Q * * * So the carrier would have to be
6 to 8 feet into E Street before you would be out
beyond that lumber and able to see to your left; is
that correct?
"A Yes sir."

The driver testified that as he started across the in-
tersection (meaning the traveled portion of E Street)

he was traveling five to eight miles an hour. He continued:

"* * * I looked to my right and when I glanced back to my left I saw a couple of youngsters coming down the hill on their bicycles, and I automatically started to stop, and * * * both the boys, I guess, applied their brakes, because their bicycles went out of control * * * one of the youngsters slid into my front wheel * * *

"Q Had you stopped before you came out from behind the lumber?

"A Well, I can't say for sure whether I did or not.

"Q You can't say for sure whether you did or not?

"A No, I can't. Not at the present."

He later answered the same question, "I don't really think I did. * * * because there that isn't an intersection that I have to stop at." He testified that he first saw the boys "30, 40 feet" or "around 30 feet," or "from 35 to 50 feet, * * *" away. In a previous statement the driver said he first saw the boys when they were about 14 feet away. Plaintiff testified that the carrier was 15 to 20 feet away when he first saw it.

The carrier was almost across the traveled portion of E Street when the driver brought it to a stop. We quote:

"Q Where were you at that point when you could see the boys?

"A Well, I just—well, I probably was 5 to 8 feet beyond the lumber pile.

"Q Into E Street?

"A Into the—something like that * * *."

Defendants offered in evidence a photograph taken from the middle of Dimmick and E Streets and looking

west past the wooden bridge and up the hill down which plaintiff was coasting. The picture and the testimony show that as one comes down the hill toward the bridge he reaches the lowest point and the road then rises slightly to the level of the bridge. If the driver saw the boys coasting down the hill, he must have seen them before they reached the bridge. The witness, on cross-examination by defendants, later said the boys were "approximately across the bridge or still on the bridge a little bit." We quote further:

"Q Had you sounded your horn before you came out from behind that lumber, Mr. Johnson?
"A I do not recollect if I did."

Thus it is clearly established that the defendants had, by piling lumber in the street, created a blind corner, which not only prevented the driver from seeing the boys until he was north of the north end of the lumber pile, but which also made it impossible for the boys to see the carrier until it emerged from the side of the pile. If the left side of the carrier was three to five to eight feet from the east side of the lumber pile as it emerged, and if the boys were still on the bridge "a little bit," then it follows that the boys were about 47 to 52 feet from the carrier when the driver first saw them. If, when first seen, the boys were coming down the hill, as the driver said, then they were an undetermined distance further apart.

Assignment of Error No. 7. The plaintiff asserts error in the giving of the following instruction:

"It is the rule of law that no person need anticipate negligence on the part of other persons, and a vehicle operator may at all times assume, until he has notice to the contrary, or by the exercise of due care on his part he should and would have known to the contrary, that other persons us-

ing the highway will exercise due care and observe the law. The defendants' driver had a right to assume that the *plaintiff would be* riding his bicycle in a careful and prudent manner and *obeying all traffic laws that are given to you in these instructions,* in the absence of notice to the contrary, unless by the exercise of due care on his part he should and would have known to the contrary."

The plaintiff excepted to the above instruction, as follows:

"Plaintiff excepts to the court's instructing the jury that the defendants had a right to assume the child would obey all traffic laws until he knew or should have known that the contrary was true, on the grounds that the uncontradicted evidence shows that these defendants' agent knew of the probable presence of children in the neighborhood, and further that the instruction ignores entirely the standard of care applicable to a child."

The instruction given must be considered in the light of the evidence which we have reviewed supra.

13. Both parties seem to think that this instruction raises a question of negligence per se as applied to the plaintiff, and they brief it accordingly. In truth, that question is only indirectly involved, if at all. The problem relates to the duty of the defendant and his alleged right to assume that the plaintiff will comply with all traffic laws. In our opinion a motorist has no more right to assume that an infant will obey all traffic laws than he has to assume that the infant will conform to the standard of care of an adult on questions of common-law negligence. To hold that an infant is not guilty of negligence per se when he violates a traffic regulation, and then to hold that the defendant motorist may assume that the infant will comply with such traffic regulations, is in practical

404

effect to deny to plaintiff the protection which the law purports to give. In view of the probable factual ignorance of the law on the part of infants, there is more reason to say that there is a likelihood that plaintiff will violate a traffic statute or ordinance than there is that he will violate the common-law rule of reasonable care. A motorist knowing or having reason to know that children are in a position of danger cannot assume that they will obey all traffic laws. It may be that the motorist has a right to assume that a plaintiff child will exercise the care reasonably to be expected of children of his age, experience and education under similar circumstances, but that is not the question here.

█ We note that this instruction specifically referred to this plaintiff, and said that defendants could assume that he (the plaintiff) would be obeying all traffic laws, in the absence of notice to the contrary. The court also gave an instruction to the effect that one who knows or should know that he is dealing with children must anticipate the ordinary behavior of children. The two instructions are inconsistent and the generality of the latter instruction does not cure the specificity of the former.

In view of the evidence which we have reviewed, both by plaintiff and defendants as to the distance between the boys and the driver when each saw the other, we hold that there was no reason for the court to instruct the jury that the driver had a right to assume that the boys were obeying all traffic laws or exercising reasonable care. He could assume only what he saw in those seconds which preceded the crash. The giving of the instruction to which Assignment of Error No. 7 applies was prejudicial error. See, Prosser, Law of Torts, 2d ed, pages 138-141; *Pisarek*

*v. Singer Talking Machine Co.,* 185 Wis 92, 200 NW 675. Whatever the extent of the right may be, there is no more right on the part of a driver to assume that a known child will obey a traffic law than there is to assume that he will exercise the care of a reasonably prudent adult.

■ Assignments of Error 8, 9 and 10. We find no reversible error in the refusal of the court to give the requests set forth in these assignments. All three assignments complain because the court failed to caution the jury that they should consider only such charges of contributory negligence as are set forth in the answer. The court could have made the matter clearer but it did instruct that "The issues of fact to be determined by the jury * * * are those arising upon the pleadings." He then set forth the charges of contributory negligence set forth in the answer. We think that further explanation rested in the court's discretion. Failure to further elucidate was not reversible error.

■ Assignment of Error No. 11. Plaintiff asserts that the court erred in failing to sustain his objection to a question propounded to Claude Simmons, the father of the injured boy, on cross-examination. The question was:

" 'You stated the boy to your knowledge hadn't been in any accidents before June 11, 1958, is that correct?

" 'A That's right.

" 'Q How about since that accident?'

"To which the following objection was made:

" 'Mr. Duncan: I object to that as being completely irrelevant.'

"To which objection the court ruled as follows:

" 'The Court: I think you may answer. Exception allowed.' "

The answer was, "I heard that he run in a ditch," to which the court said, "Don't state what you heard, just what you know." Answer: "Well, I don't know." There was no motion to strike the hearsay. Assuming that the jury considered the answer "that he run in a ditch," there was no prejudice to plaintiff's case. A boy with only one leg might well have such an accident when riding a bicycle.

 Assignment of Error No. 12. Plaintiff assigns as error the failure of the court to sustain an objection to a question propounded to plaintiff's mother, as follows: "Since that time have you filed an action in which you demand two-thirds of any recovery that might be received by Claude Simmons?" The objection was irrelevancy, and that "it is cumulative." Plaintiff cites *State v. Haines,* 147 Or 609, 34 P2d 921; *Highway Comm. v. Superbilt Mfg. Co.,* 204 Or 393, 281 P2d 707; *Clevenger v. Schallhorn,* 205 Or 209, 286 P2d 651. None of these cases convinces of any reversible error in this ruling. Impeachment to show bias or interest is permissible. Cumulative testimony may be rejected in the discretion of the court, but the court may also in its discretion permit cumulative testimony. *State v. Haines,* supra.

 Assignments of Error 13 and 14. In these assignments serious questions are raised. In the instruction covered by Assignment 13, the court advised the jury, in part, as follows:

"Under the statute law I have given you in part, *as the plaintiff proceeded* easterly along E Street, toward its intersection with Dimmick Street, *he had the following duties imposed upon him:* (1) *He was required to look alertly to his right* in an endeavor to apprise himself of the presence of all vehicles, including the lumber carrier, approaching the intersection from Dimmick Street to his right,

and to endeavor to determine their distance from the intersection, and their rates of speed. * * *"

This portion of the instruction is subject to criticism because of its detailed statement as to the duty of the infant plaintiff to determine the distance "of all vehicles, including the lumber carrier, approaching the intersection", when it was invisible because of the lumber piles, and after it became visible, it was in, and not distant, from the intersection. The instruction continues:

"* * * Third, *plaintiff was required to yield right of way to all vehicles,* including the lumber carrier, *with which there was reasonable likelihood of collision.* And that, of course, is provided it was in the street, public street. In doubtful cases he should yield the right of way. * * *"

An ordinance of Grants Pass provided:

"It shall be unlawful for any person wilfully to place or deposit upon any street or public way any substance tending to * * * detract from the * * * safety of such street or public way."

The piling of lumber in E Street, completely shutting off the view of the defendants' driver to the west, and of the plaintiff to the east, could be found by the jury to have detracted from the safety of the street, and if so, it was negligence as a matter of law. It may well be argued that the statute was not intended to give the right of way to the drivers who are guilty of negligence in a respect highly material to the determination of the rights of the parties. However, we can find no authority supporting this view, and shall recognize the rule that the defendants' driver had the right of way subject to the rule well stated in *Keys v. Griffith,* 153 Or 190 at 198, 55 P2d 15, where it is said:

"The right of way conferred by the statute is

not inflexible and absolute. Neither is it exclusive nor one which may be exercised without due regard to the surrounding conditions and the safety and rights of others. Its exercise must at all times be reasonable and not arbitrary and, whenever danger to others may reasonably be anticipated from its exercise, due care and caution should be observed to prevent such injury. West v. Jaloff, 113 Or. 184 (232 P. 642, 36 A.L.R. 1391); Stryker v. Hastie, supra. [131 Or 282, 288, 282 P 1087]. As said by Walter H. Anderson in An Automobile Accident Suit, section 180, no person can rely on his having the right of way as a defense for his own negligence. \* \* \*"

The last sentence quoted from the Keys case hints at a rule which would hold that the defendants lost the right of way because of their negligence. We have examined many decisions in which it has been held that one having the right of way will lose it if he enters the intersection at an excessive speed (see, *Dorey v. Myers,* 211 Or 631, 317 P2d 585, and *Erdahl v. Hegg,* ND 1959, 98 NW2d 217 at 221) but they are all based upon statutes which so provide. While the trial court did not use the language of the Keys case in its instruction, it did give a general charge to the effect that even if defendants' carrier had the right of way, they would not be excused from the duty to use ordinary care. Recognizing the existence of a close question, we nevertheless hold that there was no reversible error in the last portion of the instruction quoted.

■ Assignment of Error No. 14 excepts to the following instruction given by the court:

"You are instructed that any person using a public highway, until he has notice or in the exercise of ordinary care should have notice to the contrary, has the right to assume that all other persons using the public highway will do so in a

reasonable manner and will obey the law of the road. Therefore, the operator of the lumber carrier was under no duty to anticipate, until he knew or in the exercise of ordinary care should have known that he would meet a bicycle approaching from his left on an intersecting course that would not yield the right of way to him at such intersection if the two vehicles approached the same simultaneously. Nor, until known, was he under any duty to watch for and guard against a bicycle being operated so as to create such a situation."

The instruction is confused and confusing. It concerns the rights of the defendants' driver, not the duties of the plaintiff. It hints at least at the idea that the plaintiff *created* "such a situation" and would not yield the right of way to him. It ignores all consideration of the fact that the defendants were responsible for the creation of a dangerous condition in the intersection by piling the lumber there. The instruction must have seriously confused the jury.

Assignment of Error No. 15. This instruction related to the issue of proximate cause as to defendants' speed. We find no error.

██ Assignment of Error No. 16. This assignment asserts that the court erred in receiving in evidence a written statement by the witness Stevens which was in part inconsistent with his testimony. No error is found. The cases cited are not in point.

██ Assignment of Error No. 17. The court gave an instruction on unavoidable accident. As a part of it, the court said:

"If Plaintiff's injury or damage was the direct and proximate result of an independent, responsible and intervening agency, the Defendants would not be liable. * * *"

There was no evidence of any intervening agency, and the instruction should not have been given. The only conduct which could conceivably be treated as an intervening agency would arise on the theory that negligence by the defendants entering the traveled portion of E Street was an intervening agency which isolated other negligence of the defendants in obstructing the street with lumber piles. Subsequent negligence, if it existed, should not isolate a prior negligence of the same party if both contributed to the plaintiff's injury.

Assignment of Error No. 18. The issue here presented is adequately covered by our consideration of Assignment 19.

Assignment of Error No. 19. Error is assigned in the refusal of the court to give the following instruction:

"I instruct you that at the time and place of the collision involved in this case, an Ordinance of the city of Grants Pass provided as follows:

" 'It shall be unlawful for any person wilfully to place or deposit upon any street or public way any substance tending to * * * detract from the * * * safety of such street or public way.'

"If you find that at the time and place of the collision referred to in the Complaint, piles of lumber had been placed upon 'E' Street by the Defendants, and that such lumber tended to detract from the safety of said public way, then I instruct you that such would constitute negligence as a matter of law, and if you further find that such negligence, if any, was a proximate cause of the collision and the damages, if any, sustained by the child Plaintiff, and that the Plaintiff was free from contributory negligence, then your verdict must be in favor of the Plaintiff. * * *"

We have held that if the lumber admittedly piled in

the intersection by the defendants "tended to detract from the safety of said public way" such act would constitute negligence per se. The evidence would permit a finding that it did so detract. The only problem is whether there was a question for the jury on the issue of proximate cause. If there was, then the instruction should have been given. In their brief the defendants concede that "a remote factor relating to the accident was the existence of a blind corner," but they contend that as a matter of law it was not a proximate cause. We first refer to the established rule that ordinarily proximate cause is for the jury. No citations are necessary. When one person creates a dangerous condition and a different person negligently conducts himself relative to that condition to the injury of a plaintiff, it may at least be argued that the later negligence of one was an intervening cause insulating the original fault of the other, although there are cases to the contrary. But here the defendants who caused the obstruction and who, as the jury could find, should have foreseen the likelihood of collisions at the blind intersection, are the very defendants whose conduct at the blind corner caused the collision, the danger of which they should have foreseen when they placed the obstruction in the street. We cannot say as a matter of law that a negligent act by the defendants in operating the carrier was an intervening cause breaking the chain of causation in respect to their alleged negligence per se in obstructing the highway. Both may have contributed proximately to the collision.

The Restatement of Torts defines legal cause, as follows:

"The actor's negligent conduct is a legal cause of harm to another if

"(a) his conduct is a substantial factor in bringing about the harm, and

"(b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm." 2 Restatement of Torts, Causation, § 431, p 1159.

The clear inference is that conduct may be a substantial factor even though not the sole substantial factor in producing the harm, at least when both factors are produced by the same actor. Again, we quote:

"An intervening act of a human being or animal which is a normal response to the stimulus of a situation created by the actor's negligent conduct, is not a superseding cause of harm to another which the actor's conduct is a substantial factor in bringing about." 2 Restatement of Torts, Causation, § 443, p 1189. And see, Comment a.

See also, Harper on Torts, § 123, p 274.

In attempted support of defendants' contention that as a matter of law the creation of the blind corner was not a proximate cause of the collision, they cite *Bohm v. Racette,* 118 Kan 670, 236 P 811, 42 ALR 571; *Goodaile v. Board of Comm'rs & Wilson,* 11 Kan 542, 207 P 785; *Barton v. King County,* 18 Wash2d 573, 139 P2d 1020; and *Lyke v. State Highway Commission,* 160 Kan 709, 165 P2d 228. We have carefully examined the cases and hold that they are not controlling in this case. They involved different acts by two or more independent actors under circumstances unlike the facts in the instant case.

Defendants cite *Farley v. Portland Gas & Coke Co.,* 203 Or 635, 280 P2d 384, but that case was decided on the issue of negligence, not of proximate cause.

One other possibility must be considered. Did the

court, though refusing to give the requested instruction, cover the substance of it in another instruction?

In another instruction the court did submit to the jury the question whether the negligent piling of the lumber, if any, was the proximate cause of the collision. But such other instruction did not cover the issues presented in the instruction requested and refused. In it the court charged:

> "* * * if you find such lumber, if any, blocked E Street, and the Plaintiff upon his bicycle, from the view of the operator of said lumber carrier, and if you further find that * * * an ordinary, reasonable, prudent man would not have accumulated such lumber," and "that such negligence, if any, was the direct and proximate cause of the collision * * * and the Plaintiff is not contributorily negligent, then I instruct you to return your verdict for the Plaintiff. * * *"

This instruction was no adequate substitute for the one requested. It submitted to the jury the question as to whether the operator's view was blocked by the pile of lumber. The undisputed evidence of the operator showed that the view was so blocked. The instruction submitted to the jury the question whether defendants piled the lumber. The evidence was undisputed that they did. The instruction given left it to the jury to determine whether a reasonable man would have piled such lumber, whereas if the lumber detracted from the safety of the street, then there was a violation of the ordinance constituting negligence per se. Plaintiff's request was not covered by any instruction given.

Assignment of Error No. 20. The court did not err in refusing to give the requested instruction. There was evidence that the plaintiff knew of the intersection.

Assignment of Error No. 21. Exception is taken to an instruction by which the court enumerated the specific allegations of contributory negligence set forth in the defendants' answer. No error was committed.

We have carefully studied 21 assignments of error, 687 pages of transcript, 50 pages of instructions, 85 cases cited by plaintiff, 51 cases cited by defendants, and many other authorities. We are convinced that owing to the confusion injected into the case by the controversy over the validity of the vacation ordinance and that concerning the alleged establishment of a highway by adverse use, neither party had a fair trial on the really relevant issues.

Judgment is reversed and a new trial granted.